ROBERTSON *v.* McCLINTOCK.

Opinion delivered May 18, 1908.

LEVEES—TAX SALE—PERIOD OF REDEMPTION.—The act of April 6, 1901, § 1, providing that lands sold for nonpayment of levee taxes in the St. Francis Levee District "shall be subject to redemption at any time within one year from the day of sale thereof," contemplates that the year allowed for redemption runs from the date of the sale by the commissioner, and not from the time the sale is confirmed.

Appeal from Lee Chancery Court; *Jesse C. Hart,* Chancellor, on exchange of circuits; reversed.

*S. H. Mann,* for appellant.

1. Under the provisions of Acts 1901, p. 153, owners of land have one year from the *date of the sale* only, and not from the confirmation of such sale.  74 Ark. 302; 65 *Id.* 521-2; 24 Cyc. 36; 67 Ark. 566; 66 *Id.* 490; 55 *Id.* 37.

*P. D. McCulloch* and *N. W. Norton,* for appellees.

The word "sale" is a technical word, and means a *completed* sale, *i. e.,* the date of the confirmation.  73 Ark. 344; 84 S. W. 703; 77 Ark. 242; 91 S. W. 303; 61 Ark. 80; 69 *Id.* 539.

GEORGE B. ROSE, Special Judge.  The lands in suit were condemned by a decree of the Lee Chancery Court to be sold for levee taxes.  The sale took place on June 17, 1905.  It was at public auction, for cash, as required by the statute.  Appellant bought and paid the purchase price.  The sale was reported at the December term, 1905, but nothing was done until February 1, 1907, when appellees filed a petition, claiming to be the owners, and alleging that in October, 1906, they had made to the purchaser the necessary tender and had offered to redeem; and they asked that the right of redemption be accorded them.  Their prayer was granted on May 27, 1907, and the purchaser has appealed.  The sale was never confirmed.

The only question presented is whether the year allowed for redeeming runs from the date of the sale by the commissioner or from the date of confirmation.

The act under which the right of redemption is claimed is as follows:

"Sec. 1. That hereafter all lands sold under decree of foreclosure proceedings for non-payment of levee taxes, in the St. Francis Levee District, shall be subject to redemption at any time within one year from the day of sale thereof, by the owner thereof, or by his or her administrator or assigns.

' "Sec. 2. That any owner of land desiring to redeem lands under the provisions of section one of this act shall tender the commissioners, or other officers making such sale, the full amount of money for which said land was sold and all accrued taxes thereon, with ten per cent. interest on the whole amount *from the day of such sale,* together with the cost apportioned against such lands, and upon payment to him of said sum the commissioner or other officer making such sale shall give to such owner a certificate certifying that said land has been redeemed, and the land so redeemed shall be entered on the tax books in the name of said owner."

Sec. 3 repeals all acts in conflict with this act. Act of April 6, 1901, Acts 1901, p. 153.

Our only purpose should be to inquire what the Legislature meant by the language employed. The sale referred to in the second section is the same sale that is described in the first. It is spoken of as "such sale." The second section may therefore supply a key to the first.

It is plainly the purpose of the second section carefully to guard the rights of the purchaser, who has come forward and paid his money to discharge the burdens due the public. Its language is emphatic throughout. He who seeks to redeem must pay "the *full* amount of money for which said land was sold and *all* accrued taxes thereon with ten per cent. interest on the *whole* amount from the day of such sale," etc.

The Legislature knew that the terms of the chancery courts throughout the St. Francis Levee District are held only once every six months, and that if interest should be paid the purchaser on redemption only from the time of confirmation, he

must lose interest on his money for several months. When it, was so careful to see that he was protected, it is clear that it did not intend that he should suffer this loss. It gave him the highest rate of interest allowed in private contracts, with the evident purpose that if he did not get the land he should receive as much for his money as he could possibly get by lending it out; but, if interest would run merely from the date of confirmation, he could not receive more than six per cent., and if the land was redeemed immediately after the confirmation, he would receive no interest at all.

In this case the sale lay unconfirmed from the 17th of June, 1905, to May 27, 1907, so that if interest runs only from the date of confirmation the only reward of the purchaser for discharging the debt which the property owed the public would be the loss of two years' interest on his money. Appellees themselves recognize the injustice of this, alleging in their petition that they had tendered interest, which must have been from the date of the sale by the commissioner, since there had been no confirmation.

It is plain that in the second section of the act by "day of such sale" the Legislature intended the day when the lands were stricken off by the commissioner and the purchase price paid in cash. If the words have that meaning in the second section, how can we give them a different interpretation in the first?

The language used in the act under which the land was sold confirms us in this conviction. It is as follows:

"The court by its decree shall grant the relief as prayed in the complaint, and shall direct said commissioner to *sell* the lands described in the decree at the court house door of the county wherein the decree is entered, at public outcry, to the highest bidder, for cash in hand, after having first advertised such *sale* (such advertisement may include all the lands described in the decree) weekly for two weeks consecutively in some newspaper published in the county, if there be one, and, if no such newspaper, then that such advertisement be published in some newspaper of an adjoining county, and if all of the lands be not *sold* on the day advertised, such *sale* shall continue from day to day until completed, and said commissioner shall, by proper deeds, convey to the purchasers the lands so

*sold,* and the titles to said lands shall thereupon become vested in such purchaser as against all others whomsoever, saving to infants and insane persons the rights given them by section 12 of said act of February 15, 1893." Acts 1895, p. 91.

Here the words "sell," "sold" and "sale" are all applied to the action of the commissioner. By the terms of that act no redemption was allowed; and when the act of 1901 granted the right of redemption, it was from this sale made by the commissiner under the act of 1895 that it was granted.

It is true that there are in our reports many expressions to the effect that a judicial sale is not complete until confirmed by the court. This is true, but it by no means follows that the sale is a nullity until confirmation.

In some jurisdictions the commissioner is treated as a mere agent to take bids to be reported to the court. The highest bidder acquires no rights by his bid, and it is customary to open the bidding and to award the property to the man who will offer the highest price after the sale has been reported. The language employed in some of our earlier cases would indicate that this system was in the mind of the judge delivering the opinion, though the point was not decided.

It is now, however, the settled law of this State, as it is of most of the States, that the highest bidder at a judicial sale, to whom the property has been struck off by the commissioner, acquires vested rights, which must be respected by the court. *Colonial & United States Mortgage Co.* v. *Sweet,* 65 Ark. 152; *Banks* v. *Directors of St. Francis Levee District,* 66 Ark. 493; *George* v. *Norwood,* 77 Ark. 216.

Under these decisions, the confirmation is not the sale, but only what the word implies, the approval of something already done. The sale is made by the commissioner. Confirmation only gives the court's sanction to something that has already taken place, and authorizes the commissioner to execute the deed. The purchaser cannot take possession until he receives this, but it will not do to say that a sale which the court must confirm amounts to nothing.

If the sale has been unfairly made, or is for a shockingly inadequate price, the owner can object to the confirmation; but if he seeks to redeem instead, the redemption must take place

within one year after the lands have been stricken off by the commissioner. Otherwise the court, by neglecting to confirm the sale, could continue the right of redemption indefinitely, as was done in this case, leaving the purchaser with neither the land nor· interest on his money. We feel sure that such was not the legislative intention.

The cause is therefore reversed, with ·directions·to deny to appellees the right of redemption.