## WELLS *v.* LENOX.

### Opinion delivered December 9, 1912.

1. JUDICIAL SALES—SALE UNDER FORECLOSURE—INADEQUACY OF PURCHASE PRICE.—Where property is sold at a judicial sale, in the absence of fraud and unfairness, mere inadequacy of price, however gross, does not invalidate the sale. (Page 368.)

2. JUDICIAL SALE—WHEN COMPLETE—RIGHT OF PURCHASER.—A judicial sale is not complete until confirmation by the court, and may be set aside before it is confirmed, and until confirmed by the court, a deed made to the purchaser confers no right to the property. (Page 369.)

3. JUDICIAL SALE—CONFIRMATION.—While the purchasers at a judicial sale acquire certain rights, it is proper for the chancery court to refuse to confirm the sale when the conduct of the parties has been such as to render unfair and inequitable a confirmation of the sale when it has been made for an inadequate price. (Page 377.)

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

*F. M. Rogers,* for appellant.

In the absence of fraud and unfairness, mere inadequacy of price, however gross, does not invalidate a judicial sale. 20 Ark. 381; 44 *Id.* 502; 47 *Id.* 86; 52 *Id.* 316; 56 *Id.* 240; 65 *Id.* 152; 66 *Id.* 490; 74 *Id.* 324; 77 *Id.* 216. There is no proof of accident or mistake.

*J. Bernhardt* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

The property was sold for a grossly inadequate price. Where there is any unfairness, mistake or misunderstanding about a sale, to the prejudice of the rights of the owners the sale will be set aside. 20 Ark. 381; 44 *Id.* 502; 47 *Id.* 86; 52 *Id.* 316; 56 *Id.* 240; 65 *Id.* 152; 66 *Id.* 490; 74 *Id.* 324; 77 *Id.* 216; 34 *Id.* 346; 62 *Id.* 215;

Rover, Jud. Sales, § § 126-8; 12 A. & E. Enc. Law, 219; 73 Ark. 37; 86 *Id.* 255; 90 *Id.* 166; 67 *Id.* 200; 73 *Id.* 489.

KIRBY, J. On March 24, 1911, Sledge & Norfleet Company brought suit for the balance due upon a promissory note of S. H. and Addie A. Lenox and to foreclose a mortgage given to secure the payment thereof. At the October term, 1911, a decree was rendered in their favor for $1,844.25, and the property conveyed by the trust deed ordered sold and a commissioner appointed for that purpose. The commissioner advertised the sale for January 22, 1912, and on that day sold the real estate for $3,850 to M. Wolchanski, who waived the right to credit and paid the amount of his bid in cash and received from the commissioner a certificate of purchase which he subsequently assigned to J. E. Wells, appellant. The commissioner reported the sale to the April term, 1912, of the court and appellees, S. H. and Addie A. Lenox, filed exceptions to the report.

In February, 1912, appellees, S. H. and Addie A. Lenox, filed a complaint in the chancery court against the purchaser and his assignee, J. E. Wells, alleging that Wolchaski had assigned the certificate to Wells, that the latter had taken possession of the lands before the confirmation of the sale, that a part of the lands sold by the commissioner was not their property but the property of Addie F. Lenox, who was also a party to this suit, that the sale by the commissioner was fraudulent, unjust, inequitable and for a grossly inadequate price, and prayed an order restraining Wells from taking possession and other relief. The temporary restraining order was issued.

J. E. Wells, the assignee of the certificate of purchase, answered that he was the owner of the certificate of purchase issued to Wolchaski, that the property had been abandoned by Lenox at the time of his purchase thereof and that he entered for the purpose of protecting his interests as the holder of the certificate of purchase; denied the alleged right of redemption and that the sale was fraudulent, unjust, inequitable and for a grossly in-

adequate price; alleged the existence of a prior mortgage upon the said land to secure a debt of $4,700, the payment of which he assumed by the purchase thereof and $380 past due interest upon said first mortgage, all of which he was compelled to pay to the holder to protect himself. He also filed an intervention to the original, setting up the same matters.

The suits were consolidated, and upon hearing the chancellor found that no fraud was perpetrated upon appellees, S. H. and Addie A. Lenox, in reference to the sale. That they were by accident and mistake deprived of the opportunity of attending the sale of the land and of the opportunity to procure funds to satisfy the amount due thereon prior to the date of the sale and that the price for which the land sold at the commissioner's sale was grossly inadequate.

It ordered the appellees to pay to Sledge & Norfleet Company $1,948.30 and cost, and upon the payment refused to confirm the sale and decreed that it should be set aside. It further directed the court commissioner to pay to appellant, John E. Wells, the $3,850 he had paid for the certificate of purchase for said land. From the decree this appeal comes.

Appellant contends that the court erred in sustaining the exception to the report of the sale and setting aside the same.

From our review of the testimony we are not able to say that the chancellor's finding that the land sold for a grossly inadequate price is against the preponderance of the testimony. Several of the witnesses testified the lands were worth between $15,000 and $25,000—some of them placing the value at $20,000, an amount double the price for which they sold; the inadequate price alone, however, would not invalidate the sale. "The rule in reference to judicial sales is that in the absence of fraud and unfairness, mere inadequacy of price, however gross, does not invalidate the sale." *Brittin* v. *Handy,* 20 Ark. 381; *Fry* v. *Street,* 44 Ark. 502; *Colonial & United States Mortgage Co.* v. *Sweet,* 65 Ark. 152; *Sawyer* v. *Hentz,* 74 Ark. 324.

Such a sale is not complete, however, until confirmation and may be set aside before it is confirmed.

In *Wells* v. *Rice,* 34 Ark. 346, the court said: "But until confirmed by the court, a sale made under its decree is not completed and a deed to the purchaser confers upon him no right to the property.

"The theory of sales of this character is 'as the court says in *Sessions* v. *Peay,* 23 Ark. 41, 'that the court is itself the vendor, and the commissioner, or master, its mere agent in executing its will. The whole proceeding, from its incipient stage, up to the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision of the court. The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require.' Ror. on Jud. Sales, § 1; 2 Frem. Void Jud. Sales, § 41."

And in *Greer* v. *Anderson,* 62 Ark. 215, the following:

"Courts may generally be expected to confirm sales which have been conducted according to the directions and upon the terms prescribed by them, unless intervening circumstances should make it unwise or unjust to do so. But they are not compelled to confirm them, and no purchaser at such a sale has the right to rely absolutely upon the order of the court directing the sale, and the fact that the agent of the court has pursued the terms prescribed in making the sale."

In *The Bank of Pine Bluff* v. *Levi,* 90 Ark. 166, the court said: "Before the confirmation of the commissioner's sale, irregularities may be shown that the sale was not made in accordance with the provisions of the decree; or any misconduct or unfairness may be shown, in order to set aside such sale. And upon all these matters, the chancery court passes when it makes its decree of confirmation. And from such an order or decree of confirmation an appeal lies. Ror. on Judicial Sales, par. 132."

It is nevertheless true that the purchasers at such

sale acquired rights which can not be disregarded except for sufficient reason. In *Robertson* v. *McClintock,* 86 Ark. 255, the court said:

"It is now, however, the settled law of this State, as it is of most of the States, that the highest bidder at a judicial sale, to whom the property has been struck off by the commissioner, acquires vested rights, which must be respected by the court. *Colonial & U. S. Mortgage Co.* v. *Sweet,* 65 Ark. 152; *Banks* v. *Directors of St. Francis Levee Dist.,* 66 Ark. 493; *George* v. *Norwood,* 77 Ark. 216.

"Under these decisions, the confirmation is not the sale, but only what the word implies, the approval of something already done. The sale is made by the commissioner. Confirmation only gives the court's sanction to something that has already taken place, and authorizes the commissioner to execute the deed. The purchaser can not take possession until he receives this, but it will not do to say that a sale which the court must confirm amounts to nothing. If the sale has been unfairly made, or is for a shockingly inadequate price, the owner can object to the confirmation."

The evidence shows that appellees were and had been long indebted to Sledge & Norfleet Company and that upon the recovery of the judgment and the decree of the sale of the property mortgaged to secure the debt, S. H. Lenox went to the Union Trust Company of Little Rock to borrow money to pay off said judgment and the prior mortgage upon said lands. He was told by the president of said banking company that he thought that there would be no trouble about lending him the amount desired and that he should get up his abstracts and submit them as soon as he could. He immediately ordered the abstracts made in December in Desha County; there was some delay about their completion and when finally delivered they were found not to be correct. Meanwhile the date of sale was approaching and appellee, Lenox, was anxious about procuring the loan and insisted with the officers of the company that it should not be longer de-

layed, and, that the lands having been advertised for sale, that the bank should lend them enough money in any event to pay off the judgment under which the sale was ordered. He was assured by the president of the company that he would let him have the money as soon as they could look over the abstracts, and also that he would arrange the matter, and thought he could get Mr. Norfleet to extend the time of sale until the abstracts could be received and the necessary papers prepared. Lenox was thereafter assured by another person that he could and would procure the loan for him if the trust company did not, but understood that he was to get the money from the trust company and declined the offer.

About the 10th or 12th of January, 1912, Lenox again went to the officers of the trust company about the loan and was urged to hurry his abstracts. He thereupon directed by telephone the abstract company at Arkansas City to prepare and deliver the abstracts by a certain day, which it agreed to do. It failed, however, to finish the abstracts in that time. The trust company wrote to Sledge & Norfleet Company at Memphis that they expected to make the loan to pay off the decree and subsequently Mr. Reyburn, its president, had several telephone conversations with Mr. Norfleet at Memphis, in one of which he suggested a postponement of the sale until matters could be concluded. He stated "Mr. Norfleet did not expressly agree to a postponement at that time but did not refuse it, and I understood that there would be no difficulty about it. I asked Norfleet to send his mortgage and what abstracts of title he had in his possession in order that the trust company might determine the amount necessary to take up the outstanding debts. Mr. Norfleet agreed to have Mr. Rogers send all papers to me for his information. On January 12, 1912, Mr. Rogers wrote a letter to the Union Trust Company, addressing it by mistake to Pine Bluff, Arkansas. The letter was forwarded to Little Rock and reached me on January 15. In this letter Mr. Rogers said: 'At the request of Mr. F. M. Norfleet, I herein enclose you origi-

nal mortgage to S. H. Lenox, and a pencil memorandum, showing the various payments made on the note and the balance as due thereon on the 15th day of March, 1911. The original note is filed in the chancery court at Arkansas City. The decree was for the amount shown due on this statement, plus interest up to the 20th day of October, 1911; it bears interest from that date up to the present time at the same rate. I sincerely trust that you will make the loan. Kindly advise me both here and at Arkansas City how the matter progresses, as I will be at Arkansas City all next week.''

On receipt of this letter the Union Trust Company wrote Messrs. Sledge & Norfleet that they had received the Lenox papers and that they were misdirected, but they did not include the abstract of title which it was necessary to have before the loan was made, and that Mr. Lenox had assured them that it was with these papers, and concluded by asking them to send the abstract at once if they had it, and saying it is only about a week now until the sale, and if we are going to do anything we must do it promptly. On the 18th of January, Mr. Rogers wrote the Union Trust Company, suggesting the postponing of the sale until February 10, as follows:

''Gentlemen: Mr. Lenox wrote the Desha Bank & Trust Company requesting an abstract of two tracts of land to be completed and delivered by the 20th. I take it that this was in reference to procuring the loan from you to pay off Sledge & Norfleet's decree. Mr. Thane and I find that Mr. Lenox has 160 acres which was not covered by any mortgage except to Sledge & Norfleet. If you make the loan, this will give you first lien on this acreage. Mr. Thane tells me that he can not get the abstract ready under ten days. Neither Sledge & Norfleet or I wish to sell this property if the sale can be avoided. I therefore suggest that if there is a strong probability of your making the loan that you have Mr. Lenox and his wife write immediately by return mail at this point, requesting that the sale be postponed until February 10. This will give ample time to complete the loan.''

Reyburn testified this letter was probably received at the bank's office on the afternoon of January 19, but that he was not in at the time and it was put on the file of correspondence with reference to the Lenox matter and in some way covered up by some other letters in the file. That he was in the office a short time Saturday morning on the 20th but did not discover the letter until about noon of the 22d of January, nor had any intimation of its contents until Monday, January 22. On Saturday night, January 20, the day after the receipt of said letter in the office of which he was ignorant, he telephoned from his residence to Mr. Norfleet at his home in Memphis, asking why he had heard nothing further about the Lenox matter and "Mr. Norfleet told me he had written Judge Rogers, that Judge Rogers had written me or would write me that there would be an adjournment of the sale so as to give me time to go through papers and complete the loan with Lenox for the purpose of paying off the decree. When I had this telephone conversation I was satisfied that the sale would not be made on the following Monday, January 22, and gave the matter no further concern. After talking with Mr. Norfleet I tried to get Mr. Lenox on the phone in Little Rock but could not find him that night. Sunday night he called my residence on the phone and I advised him of the information which Mr. Norfleet had given me and told him that Mr. Rogers would not make the sale next day—Monday—but would adjourn it. He was greatly relieved, and I heard nothing further about the matter, until about 12 o'clock on January 22, when Mr. Lenox phoned me that Mr. Rogers was going ahead and make the sale and wanted to know why I had not answered his letter of the 18th. I told him that I had no such letter and immediately began an investigation and found the letter already referred to. Mr. Rogers' letter was dated January 18, which was Thursday, and my last telephone conversation with Mr. Norfleet was on Saturday night, January 20, and I thought Mr. Rogers had received or would receive further notice from Mr. Norfleet not to

make the sale, while Mr. Norfleet had evidently thought I had received the Rogers letter of the 18th and knew the conditions on which the sale would be adjourned.

On the 22d, the day of the sale, Norfleet wrote Reyburn as follows: "I had a letter today from Judge Rogers, saying there were 160 acres of land described in our trust deed not in the one held by Mr. Rose, and he had adjourned the sale of the land on a request he expected to receive from you in the mail of Saturday's or Sunday's date, asking him to do so, with the understanding if the title was satisfactory, which he was satisfied it was, you would take up the loan, and there would be no occasion for making the sale."

On the 22d Mr. Lenox called up Mr. Thane, the abstracter at Arkansas City, on the telephone and understood he had a conversation with Mr. Rogers and Mr. Rogers was present with Thane listening to the conversation. Lenox asked if Rogers had received Mr. Norfleet's message and Thane, after talking with Rogers, replied, "No; no other than his instructions." Lenox said, "Why, Mr. Rogers, Mr. Reyburn had told me a few minutes ago they had instructed you to call this sale off," and Mr. Rogers replied, "I am following my instructions." Lenox then asked Rogers to call Reyburn over the telephone and Rogers replied that he should have Reyburn call him. He was unable to get Reyburn by telephone for an hour or such a matter, and finally got him on the phone and Mr. Reyburn told him that Mr. Norfleet had given Mr. Rogers his instructions and that he would not be molested down there. Lenox then went to Reyburn's office, still feeling uneasy about the situation, but did not find him until about 3 o'clock on the day of the sale and after it was made. Rogers stated that he did not communicate with Lenox over the phone prior to the sale, that on that day about noon he was in the director's room in the bank at Arkansas City awaiting a reply to his letter of the 18th inst.; that Mr. Thane was called to the phone and he heard him say, "He is here." Thane then turned to me and said, "Lenox is

now talking about his matter; do you wish to say anything to him?'' and my reply was, ''Please tell him that unless he or Mr. Reyburn requests the postponement, the sale will occur before 3 o'clock this afternoon. I am not positive but my recollection is that I said ''request by wire.'' After the day of the sale, the next day, probably, Mr. Lenox called me over the phone and asked what had been done. I told him and he said, ''Why did you sell it?'' I replied, ''Because you would neither pay nor ask a postponement.'' ''Why did you not act on my message to you through Mr. Thane on yesterday?'' His reply was, ''That he could not find Mr. Reyburn.'' My recollection of the hour of Lenox's conversation was about 1 o'clock. I remained at the bank waiting for the message until 2:10 p. m., and then went to the court-house and had the commissioner make the sale.

Lenox on cross examination by Rogers answered as follows:

Q. 6. Did he not tell you that I requested him to say to you that that sale would occur before 3 o'clock unless you or Mr. Reyburn asked me to adjourn the sale over?

A. 6. Well, now, I did not understand it that way, Mr. Rogers; the way I understood that was I said, 'Why, Mr. Rogers, Mr. Reyburn said he told you to put off this sale,' and the way I understood it you said, 'Well, you tell Mr. Reyburn to call me up, you tell Mr. Reyburn that I want to talk to him, to call me up before 3 o'clock;' I think that's the identical words.

Q. 7. Don't you remember that Mr. Thane told you that I asked him to say to you that the sale would occur before 3 o'clock unless I was requested by you or Mr. Reyburn to adjourn it over?

A. 7. I do not remember it that way; no, sir. It might have been, but I did not take it that way.

On re-direct examination Lenox answered as follows:

Q. Mr. Rogers asked you in cross examination if you did not understand him to say at the telephone, or asked Mr. Thane to tell you over the telephone, that the

sale would not be postponed unless you or Mr. Reyburn requested it. If you had understood that message as Mr. Rogers stated it to you, would you not have requested postponement?

A.   Most assuredly I would, then and there.

It is evident that Sledge & Norfleet and their attorney were disposed to accept the payment of their judgment instead of compelling a sale under the decree of the court for its satisfaction, and that they were willing to grant a continuance of the sale to another day to give time in which to complete the papers necessary to procure the loan for the payment of their claim. It is also apparent that the bank and trust company had led Lenox to believe that it would make the loan and its president had understood from Mr. Norfleet at Memphis that the sale would be postponed and assured Lenox that it would be done, and after this assurance, which was justified certainly by the letters of Norfleet to Reyburn, Lenox took no steps to get the money from others from whom he could have procured it to pay the judgment and was necessarily prevented from attending the sale on account of it, not thinking it necessary to be there upon that day, and understanding that it would be postponed.

After his conversation on the day of the sale with the attorney who was directing the commissioner, he was unable to find the president of the trust company and have him assure the commissioner that the judgment would be paid upon postponement of the sale and he also states that he understood from the attorney that he was following his instructions and not that the sale would be made in any event unless its postponement was requested. His calling the attorney on the next day after the sale, asking why it had been made, shows that he did not understand that it would be made and still thought the sale would be postponed. There was no fraud intended by the conduct of any of the parties, but certainly it can not be said that there was not such a mistake on the part of Lenox warranted by the conduct

of the, judgment creditor, Norfleet, as would render unfair and inequitable the confirmation of the sale made upon the day it was advertised for an inadequate price as the testimony shows.  Under all the circumstances we are not able to say that the sale was not unfairly made as found by the chancellor, and the decree setting the same aside and refusing to confirm it is not erroneous, and is accordingly affirmed.