James WEIR, Appellant,

v.

UNITED STATES of America, Joe T. Kelly, Mrs. Gussie R. Kelly, Mary Ethel Kelly, Elizabeth Jane Kelly, Joanne Kelly, George S. Lensing, Leo A. Lensing, and Captain Jack Wyly, Appellees.

No. 17687.

United States Court of Appeals
Eighth Circuit.

Dec. 9, 1964.

Rehearing Denied Jan. 7, 1965.

James P. Donovan, Dallas, Tex., James M. Barker, Jr., Hamburg, Ark., for appellant.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., for appellee United States.

William H. Drew, Lake Village, Ark., for appellees Joe T. Kelly et al.

Before MATTHES, BLACKMUN, and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This appeal is from a final order of the United States District Court for the Eastern District of Arkansas, "dated November 14, 1963, refusing to set aside the execution sale of (appellant's) interest in certain lands in Chicot County, Arkansas, and the Order (of that Court) dated March 30th, 1964, denying (his) Motion for new trial or rehearing."

Two memorandum orders, both dated November 14, 1963, were entered by the court below. From the record in this appeal and appellant's brief it clearly appears that the right of review is here sought in relation to the order of the District Court set forth, in part, in the footnote.[1] Appellant's "motion for new trial" as filed in respect to that order was not lodged with the District Court until November 26, 1963, i. e. more than ten days after entry thereof. Rule 59(b) F.R.C.P.

(28 U.S.C.A.) provides: "A motion for new trial shall be served not later than 10 days after the entry of judgment." The Federal Rules of Civil Procedure make no provision for an appeal from, or review of, an order granting or denying a motion for new trial. Powers v. Continental Cas. Co., 301 F.2d 386 (8 Cir. 1962); Tsai v. Rosenthal, 297 F.2d 614 (8 Cir. 1961); Alexander v. Special School District of Booneville, Logan County, Arkansas, 132 F.2d 355 (8 Cir. 1943); State of Missouri by Unemployment Compensation Commission v. Todd, 122 F.2d 804 (8 Cir. 1941). If a motion for new trial is not served within the time prescribed by Rule 59(b), supra, it is too late and cannot be granted by the District Court. (Cf. Chicago & N. W. Ry. Co. v. Britten, 301 F.2d 400 (8 Cir. 1962). A District Court is powerless to enlarge the period of time required for the service of such a motion. Nugent v. Yellow Cab Co., 295 F.2d 794 (7 Cir. 1961); Federal Deposit Ins. Corp. etc. v. Alker, et al., 234 F.2d 113 (3 Cir. 1956). Appellant's attempted appeal in the case at bar from "the Order * * * denying (his) Mo-

[1] First stating preliminary matter not here material:

"It (was) by the Court CONSIDERED, ORDERED, and ADJUDGED:

"1. That defendant's motion to strike and amend his reply be, and the same hereby is, granted, and that the reply be, and the same hereby is, considered as amended as set forth in the motion.

"2. That defendant's motion to vacate and set aside the execution sale be, and the same hereby is, denied.

"3. That the above described execution sale be, and the same hereby is, in all respects approved and confirmed, and that the United States Marshal be, and he hereby is, authorized and directed to execute and deliver a proper deed conveying to the aforesaid Respondents in fee simple all of the right, title, interest, equity, and estate of James Weir in the lands and premises above described.

"4. That the Respondents be, and they hereby are adjudged entitled to the possession of the above described lands and premises to the exclusion of the aforesaid James Weir and any person or persons in privity with him or claiming by, through, or under him; and that the aforesaid James Weir be, and he

hereby is, ordered and directed to vacate, quit, and yield possession of said lands and premises to Respondents not later than November 25, 1963, and that if he shall fail or refuse to do so, the Clerk of this Court shall issue a writ of assistance at the request of Respondents commanding the Marshal to place Respondents in possession of said lands and premises, which writ shall be executed by the Marshal.

"5. That pending his vacating and yielding possession of said lands and premises the defendant James Weir, be, and he hereby is, restrained and enjoined from committing waste on said lands and premises and from injuring or destroying the same or any improvements or fencing thereon.

"6. That if an appeal be taken from this order, execution hereof may be stayed by the defendant upon his posting a supersedeas bond with approved surety or sureties thereon in such amount and upon such conditions as may be prescribed by law or fixed by the Court.

"Dated this 14th day of November, 1963.

"/s/ J. SMITH HENLEY
   United States District Judge."

tion for new trial or rehearing" presents nothing for review by this Court.

The memorandum opinion of the District Court, considering matters adjudicated by its judgment set forth in the footnote *ante*, may be found at 235 F. Supp. 306 (E.D.Ark.1963). The judgment on which the "execution" there considered was issued has its premise in the judgment reviewed and sustained by this Court in Weir v. United States, 310 F.2d 149 (8 Cir. 1962). It is readily apparent from those cited authorities that this litigation is what might be termed "self-made protracted litigation." Hence in the process of our applying and adapting abstract law to the concrete facts of moment in the instant appeal, we shall avoid as much rewording and reasons therefor as possible. We do so because it is apparent that all which is involved in this appeal relates to an "execution" that has been aptly termed "the fruit and end" of a lawsuit. Bank of United States v. Halstead, 10 Wheat. 51, 64, 23 U.S. 51, 64, 6 L.Ed. 264.

■ In the case at bar appellant assigns error on the part of the District Court as follows:

"(1) The trial court was without jurisdiction to order sale of Appellant's property in accordance with the provisions of Arkansas law.

"(2) The purported levy and sale under Arkansas law was lacking in due process.

"(3) The levy against and sale of a $200,000 farm to satisfy a $22,000 judgment is void under State and Federal law and a denial of due process and equal protection of the law."

By brief, appellant states: "In accordance with an opinion rendered by the (District) Court on November 14, 1963, a Judgment was entered denying Appellant's Motion to Set Aside" a sale of real property on that date, perforce a writ of execution issued by the District Court. It is "From this Judgment Appellant has filed this Appeal." In the light of the foregoing, and the fact that the record here does not reveal service of appellant's

motion for new trial within ten days after entry of the judgment, review of which he here seeks, the extent of our review is confined to "plain error" appearing in the face of the record.

Ten days after entry of the judgment against appellant, which was affirmed by this Court, *ante,* a writ of execution *fieri facias* was issued at the request of the United States, commanding the United States Marshal for the Eastern District of Arkansas to make levy on the "goods and chattels, lands and tenements of appellant." On March 5, 1962, a Deputy United States Marshal served that writ on appellant at his home and attempted to explain to him his right to post supersedeas bond or to select specific personal property to be levied on and sold thereunder. Although the evidence is somewhat unclear as to what occurred during that confrontation, it appears uncontroverted and the District Court found that appellant's attitude was then so menacing and uncooperative that the Marshal left appellant's presence without pressing the matter. The Marshal then proceeded to appellant's farm where he discovered the barn and grain bins located thereon to be locked. The only loose personal property he could discover on the farm was a piece of farm equipment which he did not consider to be of sufficient value to satisfy the judgment. This being so, he made levy of the *fieri facias* on the farm, itself, posting the necessary notices.

The Court below found that the notice of sale in relation to appellant's farm was properly advertised for April 17, 1962. The day prior to such sale appellant filed an application in the District Court to enjoin the sale, which was denied the same day. In its order denying that application the District Court pointed out that appellant had not availed himself of his rights of selection as provided by Ark. Stats. §§ 30–401, 30–421 & 30–422, even though this issue had not been raised by appellant.

The sale of the farm under *fieri facias* was duly held by the United States Marshal at Lake Village, the County Seat of Chicot County, Arkansas, on April 17,

1962. A large crowd of interested persons, generally favorable to appellant, was present for the sale, as well as appellant and his then attorney. The United States Attorney, being desirous of avoiding a sale, attempted even at this late hour to reach a settlement or at least to convince appellant to post supersedeas, but on the advice of Mr. Wyly, who was then acting as his attorney, appellant refused to consider such offers. The land was offered in a block (some 994.46 acres), and finally bid in at $60,000.00 plus interest by Mr. Wyly. Wyly supposedly was bidding for one Warren, who in turn it appears was representing the interests of appellant. Although it is controverted, there was evidence to the effect that friends of appellant controlled the bidding at the sale, allowing it to reach the above status before they stopped bidding. Following the sale to Wyly, the latter attempted to work out an agreement with the Government whereby the impounded rice on appellant's farm would be sold to satisfy the judgment, following which Warren would release his rights under the certificate of sale. Appellant refused to consider that arrangement and discharged Wyly as his attorney.

On September 28, 1962, Warren assigned his certificate of sale to the additional appellees herein, upon their payment to the United States Marshal of a total sum of $61,639.84. The judgment and accrued interest covered by the writ of *fieri facias* were satisfied from this sum and the remainder impounded by the Marshal pending the outcome of three other lawsuits then pending against appellant. The statutory period for redemption from the execution sale here mentioned expired on April 17, 1963, with no redemption therefrom attempted by appellant, as provided in Title 30, Chapter 4, Ark.Stat., 1947, Anno. It was not until April 19, 1963, that appellant filed his motion to set aside the sale here considered. Issuance of a deed to the assignees of the purchaser was held in abeyance pending the outcome of that motion. As stated above, the motion was overruled on November 14, 1963, and appellant's motion for new trial and rehearing was denied on March 30, 1964.

Appellant bases his first assignment of error, supra, on 28 U.S.C.A. §§ 2001–2002, captioned, "Executions and Judicial Sales," found in Chapter 127 of the Code, which he interprets as requiring the sale here considered to proceed under federal procedures as there outlined. Although the chapter caption under which the above-mentioned sections are found, purportedly includes "execution sales" it is manifest from the language of the statute, itself, that it is clearly made applicable only to "judicial sales." Former §§ 847–848, of Title 28 U.S.C.A. which were replaced by §§ 2001–2002, supra, were interpreted in Yazoo & M. V. R. Co. v. Clarksdale, 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921). The Supreme Court in that case noted the distinction between judicial sales " * * * made under order or decree of the court and requiring confirmation by the court for their validity * * * " and executions "which issue by mere praecipe of the judgment creditor * * * and only come under judicial supervision on complaint of either party" (257 U.S. 10, 19, 42 S.Ct. 27, 29) as being different things. In this connection it should be noted the opening words of § 2001(a) read: "(a) Any realty * * * sold *under any order or decree* of any court of the United States * * *." (Emp. added.) As has been stated by the Supreme Court, " * * * the title of an act cannot overcome the meaning of plain and unambiguous words used in its body * * *." Caminetti v. United States, 242 U.S. 470, 489, 37 S.Ct. 192, 196, 61 L.Ed. 442 (1917). For further authority that these sections (through interpretation) apply only to judicial sales, see Prudential Ins. Co. of America v. Land Estates, 90 F.2d 457 (2 Cir. 1937).

Therefore, it would appear that Rule 69(a) (28 U.S.C.A.) of Federal Rules of Civil Procedure governs the instant situation. It is there provided that the "(p)rocess to enforce a judgment for the payment of money shall be a writ of

execution, unless the court directs otherwise" and that "[t]he procedure on execution * * * shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought," and the only exception thereto is to the extent that some federal statute is applicable. As shown above, §§ 2001–2002, 28 U.S.C.A. have no application to execution sales. This being so, it follows that the District Court was correct in following Arkansas procedure to effect execution and sale of appellant's interest in the land here considered, as provided in Title 30, Ark.Stat.1947, Anno.

■ As to appellant's second assignment of error, supra, he claims denial of due process in several instances. Primarily, he bases his argument on §§ 30–401, 30–421 and 30–422, Ark.Stat.1947, Anno. § 30–401 thereof provides that a person against whom execution has issued *may* select the property to be sold to satisfy the execution. § 30–421 provides that where real estate is sold under execution sale it shall be divided into lots of 20 to 40 acres, *as directed by the owner,* and sold accordingly. § 30–422 provides that where real property is to be sold under execution, and the corner at which the sale is to be commenced is not published in a notice of sale, the officer conducting the sale shall commence the sale in the northeast corner of the property. The language of § 30–421 shows that there is nothing mandatory or self-executing about the provisions thereof and the District Court was correct in holding as it did, that that statute merely created a right for the benefit of the debtor, which right was waived by appellant in the case at bar for failure to make a "selection" as therein provided. As pointed out above, appellant made no effort to exercise a right of selection, even after his failure to do so was pointed out by the Court in its denial of appellant's petition for an injunction, to stop the sale of his farm, before the sale was held. Cf. Trapnall v. Richardson, Waterman & Co., 13 Ark. 543, 546 (1853). The general rule is that rights under an execution statute allowing selection of property are waived by neglect or refusal of the judgment debtor to exercise the right. 33 C.J.S. Executions § 95. As to Arkansas statutory provisions for selling realty in blocks of 20 to 40 acres, the Supreme Court of Arkansas, in Reynolds v. Tenant, et al., 51 Ark. 84, 9 S.W. 857 (1888), held that this requirement was merely directory and could be waived. In that cited case the Court found a waiver to exist in the fact where the complainant had attended the sale and did not object to the method with which it was being carried out. Such, exactly, was the case here. Throughout these proceedings appellant consistently refused to avail himself of his statutory rights under Arkansas law until his failure to do so resulted in damage to him as he now claims. Appellant can hardly be heard to complain of any such damages thus brought about by his failure to act.

Appellant argues that several other Arkansas statutory requirements were not complied with, all of which together resulted in a denial of due process of law. These allegations appear to have little merit. The Court below found that the proceedings complied with Arkansas statutes, and a cursory examination of the record shows this to be true. As one example, appellant alleges that a *fieri facias* can only be used in Arkansas to execute on corporate property, referring to Ark. Stat. § 30–801 which merely states that the first process to be used against corporate property is such a writ. Appellant cites no authority holding that a *fieri facias* is anything different in Arkansas than it is generally understood to be elsewhere. The case law of Arkansas, as reviewed by District Judge Henley, supra, reveals that executions are issued and used in that State to the same effect as executions are issued and levy is made thereunder in general.

■ In our review of questions arising under State law, we do not determine whether a trial court has reached a correct conclusion, but only determine whether it has reached a permissible con-

clusion. Weisser v. Otter Tail Power Co., 318 F.2d 375 (8 Cir. 1963); Solomon v. Northwestern State Bank, 327 F.2d 720 (8 Cir. 1964). That there is ample Arkansas authority to support the legal conclusion reached by Judge Henley in this case, see Whiting & Slark v. Beebe, 12 Ark. 421 (1851).

■ Appellant's third contention, that the price received at the sale of his farm under execution was unconscionably low in comparison to the alleged value of the property, is likewise without merit. As pointed out by the court below, appellant alleged the farm here considered to be worth approximately $200,000.00, but it is noted that the record contains nothing to substantiate this claim, other than unsupported testimony of one of appellant's acquaintances to the effect that he would have paid up to $200.00 an acre for the land, which testimony is all that tends to support appellant's assertion as to value here made.

■ It is, of course, the general rule that mere inadequacy of price alone is insufficient to set aside an execution sale. Graffam v. Burgess, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886); Foote v. Kansas City Life Ins. Co., 92 F.2d 744 (5 Cir. 1937). This is also the law in Arkansas. (Cf. Hinton v. Elliott, 187 Ark. 907, 63 S.W.2d 633 (1933); Wells v. Lenox, 108 Ark. 366, 159 S.W. 1099 (1912). Appellant acknowledges such to be the general rule, but notes that additional circumstances of unfairness, coupled with a grossly inadequate price, should be sufficient to require the execution court to set aside the sale here considered, citing Graffam v. Burgess, supra; Wells v. Lenox, supra. It is appellant's contention that all of the circumstances surrounding this unfortunate affair, including the sale price, show such basic unfairness that the sale of his property should be set aside.

In considering the price received at the sale to be not "grossly or even substantially inadequate," District Judge Henley pointed out that the land was sold subject to the prior mortgage in favor of the Connecticut Mutual Life Insurance Company, so that in effect all that was sold was appellant's equity of redemption. (Specifically, it was announced as a sale of " * * * the right, title, and interest of James Weir * * * " in the property.) In addition, Judge Henley noted that under Arkansas law an execution sale does not cut off dower, and in this instance appellant's wife retained her inchoate right of dower in the land here considered, which substantially affected the marketability of title thereto. Roetzel v. Beal, 196 Ark. 5, 116 S.W.2d 591 (1938); Humphreys v. McKnight, 202 Ark. 715, 152 S.W.2d 567 (1941). He also noted that the very factor which was the instigation of this litigation, the low crop allotments, might very well also affect the market price of appellant's farm. Considering all such factors, it cannot be said that the District Court was in error in refusing to consider the execution sale price of appellant's "interest" in the farm as being unconscionably low.

Appellant's contention that the entire history of this litigation, particularly surrounding the levy and sale, is tainted with such prejudice and unfairness as to require this Court to set aside the sale, is without any merit. In his brief, appellant recites with some particularity the areas in which he feels that the Government and its agents acted in such a manner as to have caused a miscarriage of justice to occur. We are here concerned only with the levy under execution and sale of appellant's "interest" in his farm, and a search of the record shows that, contrary to appellant's allegations, the District Court, the United States Attorney, and the Department of Agriculture acted throughout within the boundaries of applicable law and with the utmost fairness and concern for appellant's rights, and that they fully respected and protected the same within due process of law. The record clearly shows that appellant alone must bear the responsibility for having caused such sale to occur. As stated by Judge Henley, referring to appellant's right to contest the Govern-

88

ment's agriculture program in the courts, which gave rise to the judgment and execution here considered, " * * * he should have foreseen that he might lose the case and should have been prepared for the consequences. He could not avoid losing the case, but he could have avoided losing his farm. It is unfortunate that he has lost both." 235 F.Supp. l. c. 313.

For the reasons above stated, it follows that the orders of the District Court here appealed from must be

Affirmed.