## YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY ET AL. *v.* CITY OF CLARKSDALE.

### ERROR AND CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 15. Argued October 6, 1921.—Decided November 7, 1921.

1. A judgment of a state court denying the validity of a title claimed under an execution sale based upon a federal court judgment, because of supposed irregularities in the marshal's attempted exercise of his authority to sell, the authority itself not having been drawn in question, is reviewable by certiorari and not by writ of error, under Jud. Code, § 237, as amended. P. 15.
2. The application of state laws to a marshal's sale of property under a common-law execution issued on praecipe from a federal court,

is governed by the conformity provisions of Rev. Stats., §§ 914, 916.  P. 18.

3. The provisions of the Act of March 3, 1893, c. 225, 27 Stat. 751, relative to the place of sale, apply only to judicial sales made under order or decree and requiring confirmation by the court for their validity.  P. 18.

4. An assignment of error *held* sufficient to submit to the court below the question whether a marshal's sale was valid under Rev. Stats., § 916.  P. 19.

5. Under Rev. Stats., § 916, giving to the party who has recovered judgment in a federal court "similar remedies * * * by execution * * * as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of any such circuit or district court," the state law applicable is that which was in force when the act of which § 916 was a part was originally enacted, viz, June 1, 1872, in the absence of general rules adopting later state law.  P. 19.

6. Under § 849 of the Mississippi Code of 1871, which, prior to amendment by § 3467 of the Code of 1892, provided that shares or interests in any corporation, as well as banknotes or evidences of debt circulating as money, might be taken and sold under an execution in the same manner as goods and chattels, or applied to the payment of the execution, and required the custodian of the corporate books to give the levying officer a certificate of the number of shares or amount of interest held by the defendant in the company, and declared that the purchaser of such shares or interest at the execution sale should become the owner thereof in the same manner as if such shares or interest had been regularly assigned to him by the defendant,—a certificate of shares issued to a judgment debtor and found in the custody of his agent or trustee was a proper subject of levy and sale.  P. 20.

7. Under the laws of Mississippi, a *venditioni exponas* is not necessary to enable the officer to proceed with the sale of property taken under a *fieri facias* of which the return day has not gone by; and, where the return on the latter writ shows due levy and sale, references therein to a *venditioni exponas* may be treated as surplusage.  P. 22.

8. Under Rev. Stats., § 914, which requires that proceedings in common-law cases in the federal courts shall conform to those of state courts "as near as may be," and § 916, which gives the judg-

ment creditor remedies on common-law executions "similar" to those of the state court, an execution sale of personal property which under the state law (Miss. Code, 1871) must be made at the court house of the county may be made at the court house of the United States where the judgment was entered and execution issued. P. 22. *Smith* v. *Cockrill,* 6 Wall. 756, and *Amy* v. *Watertown,* 130 U. S. 301, distinguished.

81 So. 178, reversed.

CERTIORARI to review a judgment of the Supreme Court of Mississippi rendered in favor of the City of Clarksdale in a suit brought by the city to assert its ownership in shares of stock in a railway company. The facts are stated in the opinion.

*Mr. H. D. Minor,* with whom *Mr. Charles N. Burch* and *Mr. Blewett Lee* were on the briefs, for plaintiffs in error and petitioners.

*Mr. Gerald Fitzgerald,* with whom *Mr. Geo. F. Maynard* and *Mr. W. W. Venable* were on the briefs, for defendant in error and respondent.

The writ of error should be dismissed. Jud. Code, § 237, as amended. The federal question presented was not of sufficient importance to warrant certiorari.

The Act of 1893, 27 Stat. 751, has no application to a sale of property under execution in common-law cases.

Under §§ 914, 916, Rev. Stats., the only way to enforce one's judgment in the federal court is to proceed according to state practice. *Chamberlain* v. *Mensing,* 47 Fed. 435; *Ex parte Boyd,* 105 U. S. 647; *Perez* v. *Fernandez,* 202 U. S. 80; *Amy* v. *Watertown,* 130 U. S. 301. Section 914 contains the significant words not contained in the former acts,—"any rule of court to the contrary notwithstanding." See *Ward* v. *Chamberlain,* 2 Black, 430. The state rules can be varied only where necessary to enable federal officers to function under them.

The rule of court need not be in writing, but may exist in the general practice of the court. *Wayman* v. *South-ard,* 10 Wheat. 1; *Logan* v. *Goodwin,* 104 Fed. 409; *Citizens Bank* v. *Farwell,* 56 Fed. 570.

The form of the marshal's return shows that he was acting under the Mississippi Code of 1892, and is convincing evidence that it was the custom of the court to use the statute in force at the time the officer acted.

The decisions of the state courts construing their own statutes are binding upon the federal court even though it might be said that such state statutes when adopted by the federal courts become *pro hac* federal statutes.

The writs and levy and sale thereunder are all void and of no effect and subject to collateral attack.

At common law, stock in a corporation could not be levied upon, and it is only by statutory authority that this can now be done; the statute must be literally and strictly followed. 17 Cyc. 944, 945; Cook, Corporations, vol. 2, 6th ed., § 480; *Jellenik* v. *Huron Copper Mining Co.,* 177 U. S. 1; Miss. Code, 1892, § 3467.

There is a sharp difference between the real interests of a person in a corporation and the stock certificate or indicium of ownership of the share or interest. Section 3467, Code 1892, especially draws this distinction, and does not provide for the sale of the stock certificate. The distinction is plainly drawn in the *Jellenik Case, supra.* See *Simpson* v. *Jersey City Contracting Co.,* 165 N. Y. 193.

The Code of 1871, § 849, also makes this distinction, for it requires that demand be made upon the company, in which the debtor is supposed to own a share or interest, for the amount and value of said share or interest belonging to the debtor, which provision precludes the idea that the stock certificate itself could be sold as such.

A sale made by the marshal of the United States of personal property or real estate in front of the federal

court building is void. *Koch* v. *Bridges*, 45 Miss. 247; *Jones* v. *Rogers*, 85 Miss. 802; *Moody's Heirs* v. *Moeller*, 72 Tex. 635; *Sinclair* v. *Stanley*, 64 Tex. 72; *Smith* v. *Cockrill*, 6 Wall. 756; *Bornemann* v. *Norris*, 47 Fed. 438.

Where a sale is void and not merely voidable, it may be attacked in collateral proceedings. 17 Cyc. 1286; *Harper* v. *Hill*, 35 Miss. 63; *Koch* v. *Bridges, supra; Jones* v. *Rogers, supra; Smith* v. *Cockrill, supra;* 2 Freeman on Execution, 3d ed., § 289.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

This is a controversy over the ownership of 250 shares of the stock of the Louisville, New Orleans & Texas Railway Company, a corporation of Mississippi. The City of Clarksdale acquired the stock in 1891, in consideration of $25,000 of bonds issued by it to aid in the construction of a new branch of the Railway Company in which it was interested. The certificate for the stock, the City left in the custody of a Clarksdale bank. The Louisville, New Orleans & Texas Railway Company in 1892 was merged by consolidation in the Yazoo & Mississippi Valley Railroad Company. In 1897, the Pacific Improvement Company, a bondholder, recovered against the City in the United States Circuit Court for the Northern District of Mississippi a judgment for unpaid interest on the bonds amounting to $3,058.13. Execution issued to the marshal who levied on, and took possession of, the stock certificate in the Clarksdale bank and at public sale sold the certificate and shares to the judgment creditor for $100, which was credited on the judgment. In 1898, the City made a compromise with the bondholders, by which, for payment of the principal of the bonds in cash, the bondholders released all claim of interest and transferred the unsatisfied judgment. No mention was made of the

stock in this settlement. In 1904, the Pacific Improvement Company for $2,770.50 sold the stock to the Mississippi Valley Company, an investment company, and transferred the certificate to that company. The value of the stock, which was little or nothing at the time of the judgment and the compromise, has greatly enhanced and is averred to be $75,000.

By its bill in equity in the state chancery court, the City sought to compel the Yazoo & Mississippi Valley Railroad Company to recognize the City's ownership of this stock and to issue to it stock of the consolidated company in lieu thereof, in accordance with the terms of the merger. The Mississippi Valley Company, after the answer to the bill revealed its ownership of the stock, was made a defendant and the real contest became one between the City and that company.

In the pleadings and at the hearing the City attacked the marshal's sale as void under the statutes of Mississippi, and relied on the duty of the United States courts under federal statutes to conform their executions and sales to the laws of the State in which they are held. The state chancery court declared the sale void and granted the relief asked by the City. The state Supreme Court affirmed the decree. No opinion was filed in either court.

We are met by a preliminary question of jurisdiction. The case was first brought here by a writ of error to the state Supreme Court. Then, within due time, a petition for a certiorari was also presented, and consideration of the latter was postponed until the hearing on the writ of error. Under which writ can the case be reviewed here? The Mississippi Valley Company relied below, and here insists, on a title acquired under an execution sale of a United States marshal. This is a title claimed under an authority of the United States. Under § 237 of the

Judicial Code as amended by Act of September 6, 1916, c. 448, 39 Stat. 726, if the validity of an authority exercised under the United States is drawn in question and the decision is against its validity, review is by writ of error. If only a title claimed under an exercise of such an authority is in dispute, then certiorari is the proper writ. The authority of the United States marshal to make sales upon judgments in the United States courts and to give title thereby is not drawn in question in this case. What is denied here is the regularity of the marshal's attempted exercise of his conceded authority and the validity of the resulting title. Hence, the only way of reviewing this cause is by certiorari. *Dana* v. *Dana,* 250 U. S. 220; *Philadelphia & Reading Coal & Iron Co.* v. *Gilbert,* 245 U. S. 162; *Avery* v. *Popper,* 179 U. S. 305, 314. The writ of error is dismissed, the petition for certiorari is granted, and we now proceed to dispose of the case on the latter writ.

The validity of the judgment upon which the execution issued is conceded. The questions to be decided arise on the levy and sale. On the first day of June, 1897, a *fieri facias* issued. This writ the marshal executed and made the following return on it:

"Executed the within writ this the 13th day of Aug. 1897, by levying on and taking into my possession one Certificate of stock, the property of said defendant in the Louisville, New Orleans and Texas R. R. Number 147—for 250 shares, issued to the town or city of Clarksdale, Miss. Further executed on this the 6th day of Dec. 1897, at 12 o'clock meridian by selling said certificate of stock No. 147 after due advertisement by posting notices in three public places for the period of 10 days as provided by law, to the highest and best bidder for cash, before the Western door of the United States Court House, and post office building in the town of Oxford, Miss., at which sale the Pacific Improvement Company

became the highest and best bidder, at and for the price of $100.00 and at the same time and place I executed the writ of vende exponas issued to me in this cause and offered for sale all the interest which the City or Town of Clarksdale had in the Capital Stock of the Louisville, New Orleans & Texas Railway Co. or in the Yazoo & Mississippi Valley Railroad Company, offering said interest at the same time with said certificate of stock to the said Pacific Improvement—for the said sum of $100.00, that being the highest and best bid offered for same.

" Dec. 6th, 1897.

"(Signed)   A. J. COOKE,
"*U. S. Marshal.*"

On the back of the certificate the marshal inscribed the following:

" Pacific Improvement Company . vs. No. 3900 law. City or town of Clarksdale, Mississippi, in the Circuit Court of the United States for the Western District of the Northern District of Mississippi by virtue of a writ of fieri facias issued in said cause, I levied upon certificate of stock on August 3, 1897, and thereon December 6, 1897, pursuant to said execution and to a certain writ of venditioni exponas, I in. the manner provided by. law sold this certificate of stock, all the interest of the city or town of Clarksdale in the stock of the Louisville, New Orleans & Texas Railway Company, to the Pacific Improvement Company.   Witness my signature this, the 6th day of December, 1897.   A. J. Cooke, United States Marshal."

Counsel for the City attack the sale chiefly on two grounds, first that the levy was void because made on a mere muniment or indicium of title to the stock, the certificate, and not on the stock itself; and second that the sale was void because not made at the county court house, as required by the laws of Mississippi.

In applying the laws of Mississippi to the validity of this sale, we are governed by §§ 914 and 916 of the Revised Statutes of the United States, as follows:

" Sec. 914. The practice, pleadings, and forms and modes of proceeding in civil causes, other than equity and admiralty causes, in the circuit and district courts, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in the courts of record of the State within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

" Sec. 916. The party recovering a judgment in any common-law cause in any circuit or district court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of any such circuit or district court; and such courts may, from time to time, by general rules, adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgments, as aforesaid, by execution or otherwise."

Counsel for the petitioner also relies on the Act of March 3, 1893, c. 225, 27 Stat. 751, which provides in its first section " that all real estate or any interest in land sold under any order or decree of any United States Court shall be sold at public sale at the Court-house of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct," and in its second section " that all personal property sold under any order or decree of any Court of the United States shall be sold as provided in the first section of this act, unless in the opinion of the court rendering

such order or decree, it would be best to sell it in some other manner."

We think that the language of this act limits its application to judicial sales made under order or decree of the court and requiring confirmation by the court for their validity, and that it does not extend to sales under common-law executions which issue by mere praecipe of the judgment creditor on the judgment without order of the court, and in which the levy and sale of the marshal are ministerial, do not need confirmation to give them effect, and only come under judicial supervision on complaint of either party. The sale in such a case depends for its validity on the marshal's compliance with the requirements of law. While the Act of 1893 is not limited to equity and admiralty cases, its passage was doubtless chiefly prompted by the fact that they were excepted from the conformity sections.

It is objected that petitioners can not now rely on § 916 because they did not rely on it in the courts below. Their seventh assignment of error on appeal to the state Supreme Court complained of the refusal of the chancery court " to hold and adjudge that whether the said Act of Congress [*i. e.* the Act of 1893] or the laws of Mississippi governed the sale under said execution, the validity *vel non* of said execution was a Federal question, for that even if the statutes of the State were applicable, the same became Federal statutes by adoption under Act of Congress of June 1, 1872, U. S. Revised Statutes, Section 916 ". It seems to us that this submitted in the alternative with sufficient specification to the state Supreme Court the question whether § 916 of the Revised Statutes conferred validity on the marshal's sale.

Section 916 gives to the judgment creditor " similar remedies . . . by execution . . . *as are now* provided in like causes by the laws of the State in which

such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court ". This section was part of an act "to further the Administration of Justice", enacted by Congress June 1st, 1872, c. 255, 17 Stat. 196. The law of Mississippi applicable to this subject-matter, therefore, is the law which was in force at that date, unless the United States Court for the Northern District of Mississippi has since adopted by general rules later state law. We are not advised that it has done so.

In 1872, the law of Mississippi as to levies on stock of a corporation was § 849 of the Code of 1871, as follows:

" Bank notes, bills, or evidences of debt, circulating as money, or any shares or interest in any incorporated company, belonging to the defendant in execution, may be taken and sold, by virtue of an execution, in the same manner as goods and chattels, or applied to the payment of the execution; and the clerk, cashier, or other officer having the custody of the books of the company, shall, upon exhibiting to him the writ of execution, be bound to give to the officer having such writ, a certificate of the number of shares or amount of the interest held by the defendant in such company, and if he shall neglect or refuse to do so, or if he shall willfully give a false certificate thereof, he shall be liable to the plaintiff for double the amount of all damages occasioned by such neglect or false certificate, to be recovered in an action on the case against him. The purchaser of such share or interest, at such sale, shall become the owner thereof, in the same manner as if such share or interest had been regularly assigned to him by the defendant."

We are not advised of any construction of this section by the Supreme Court of Mississippi, and we must, therefore, treat it as a case of first impression in determining the proper mode of levying upon shares of corporate stock under its terms.

Taking the section as a whole, it classes bank notes, bills, or evidences of indebtedness circulating as money, and shares in an incorporated company together, and makes them subject to be " taken and sold *as goods and chattels* ", or to be " applied to the payment of the execution". At common law, choses in action were not subject to levy as personal property. Here the legislative purpose appears to be to treat the written evidences of the choses in action circulating as money as in themselves capable of manual seizure by the execution officer, and, in appropriate cases, of actual application as money on the execution debt. The joining of shares of stock in this section with such choses in action indicates that the shares are to be regarded as *in pari materia,* and to be dealt with, as nearly as may be, in like manner.

The elaborate and specific provision for a levy upon corporate stock of § 3467 of the Mississippi Code of 1892, which succeeded the Code of 1871, was, and was evidently intended to be, a departure from, and a substantial amendment of § 849 in this respect. Under the later code, provision for levy on bank notes, bills and other evidences of indebtedness is separated from that prescribing the levy on shares of stock. Shares of stock are no longer dealt with expressly as " goods and chattels ". The officers of the corporation are no longer required to give a " certificate " of the number of shares held by the judgment debtor to the levying officer, but are to make a statement in writing.

The procedure provided in § 849, in our view, was intended to furnish to the levying officer a certificate of the shares of the defendant which the officer could manually take and offer for sale as the shares, and which when endorsed by the officer with a record of his proceedings and sale would work an assignment of the shares to the purchaser " as if regularly assigned to him by defendant," i. e., by the usual transfer of a certificate. If we are right

in this view, and the absence of any specific form for a
levy in the section confirms us in it, then of course, a
certificate of shares issued to the debtor and found in the
custody of his agent or trustee is the proper subject of
levy and sale under the section.   This statutory method
of treating shares of stock and certificates for them as the
same for purposes of levy and " as goods and chattels "
is not without parallel.   *People* v. *Grifenhagen,* 152 N. Y.
S. 679   *Mitchell* v. *Leland Co.,* 246 Fed. 102; *Beal* v.
*Carpenter,* 235 Fed. 273; *Puget Sound National Bank* v.
*Mather,* 60 Minn. 362.

We think the levy was valid.

Counsel for respondent criticise the recitals of the re-
turn as to a *venditioni exponas* and urge that neither
ground nor time enough was shown for the issue and
return of such a writ.   Under the Code of Mississippi, as
elsewhere, this is a writ used to compel an officer to pro-
ceed to a sale under a *fieri facias,* if any of the property
taken remains in the hands of the officer unsold.   The
writ is not necessary to enable the officer to proceed with
the sale unless the return day of the writ has gone by.
With this exception, it gives him no authority not pre-
viously possessed.   Reference to it in the return may well
be treated as surplusage, not affecting the validity of the
proceedings, if in other respects they are regular.

The chief objection of respondent is to the place of
sale, which was at the western door of the United States
court house for the Western District of Mississippi in
the town of Oxford.   Counsel for respondent contend
that, under the Mississippi statute, the place of the sale
should have been at the court house of Coahoma County
at Clarksdale, the county of the judgment debtor, and
where the certificate of stock was levied on, and that the
sale at the court house of the United States where the
judgment was entered and execution issued was void.

The provision in the Mississippi Code of 1871 as to the place of sales on execution was as follows:

" 846. All sales by any sheriff or other officer, by virtue of any execution or other process, shall be made at the court house of the county, except when personal property, too cumbersome to be removed, shall be levied on, which may be sold at the place where the same may be found, or at any other convenient place, and also, except where cattle, hogs, sheep, or stock, other than horses and mules, are levied on, the sale of which may be made within the usual hours, on ten days' notice, at the most public place in the neighborhood of the defendant."

The Supreme Court of Mississippi has decided in *Koch* v. *Bridges,* 45 Miss. 247, and *Jones* v. *Rogers,* 85 Miss. 802, that, where land is not sold at the proper county court house, the sale is void. In *Jones* v. *Rogers* the sale was by a United States marshal. It was made at the State House in Jackson. A special Act of Congress of February 16, 1839, c. 27, 5 Stat. 317, provided that the United States marshal for the district of Mississippi should be authorized to sell property at the court house in each county, but that he might, at the written request of the defendant, change the sale to the place where the United States court for the district was held. The court, in the absence of any request of the defendant, held the sale void, saying:

" Statutes fixing the place of sale of lands under executions are mandatory, and not merely directory; and it is the imperative duty of officers to make such sales at the very place designated, and a sale made at any other place is not voidable merely but absolutely null and void. The place of sale is the very essence of the sale, and strict compliance with the statute is absolutely essential in order to transfer a good title to realty."

The court cites other cases of land sales by United States marshals in support of this. *Moody's Heirs* v. *Moeller,* 72 Tex. 635, in which the sale was at the United States court house just across the street from the county court house; *Sinclair* v. *Stanley,* 64 Tex. 72; *Casseday* v. *Norris,* 49 Tex. 613; *Jenners.* v. *Doe,* 9 Ind. 461. Mr. Freeman, in his work on Executions, § 289, vol. 2, says of these cases that although a view that such sales were voidable only would be reasonable, the weight of authority sustains them.

With respect to goods and chattels, however, the sale at the place fixed by statute has not been regarded as so essential as compliance with the requirement that the officer selling them shall have the goods in view of the buyers, Freeman on Execution, § 290, vol. 2; and yet, the authorities are divided on the question whether a departure from this requirement renders the sale of personalty void. We do not feel called upon, however, to inquire and decide which is the better view, because we think that under § 916, in respect to sales of personalty, the federal court house was a proper place for holding the sale.

Section 914 requires that the proceedings in common-law cases in the federal court shall conform to those of state courts " as near as may be." Section 916 gives the judgment creditor remedies on common-law executions " similar " to those of the state court. These qualifying words recognize the necessity for some play in adapting the state procedure to the practice of the federal courts. Certain things must be changed. The officer issuing the writ of execution must be the United States clerk, the officer executing it must be the marshal, and not the sheriff, the name of the court must be different, and it is but a reasonable and obvious consequence that the place of the proceedings generally shall be at the federal

court house instead of at the state court house. The inconvenience and danger of injustice to the judgment debtor in having his land sold at the federal court house when it may lie at a great distance from there in a remote county of the State, furnish strong reason why federal and other courts should hold compliance with the injunction of the state laws as to the place of sale of realty indispensable to its validity. But in case of goods and chattels which after seizure and levy can be viewed by bidders as well at a federal court house as at a state court house, there is little ground for holding that such sales, like other proceedings under its authority, may not be properly carried on at the place where the court sits. The distinction between realty and goods and chattels in this matter is recognized in the provisions already noticed, of the Act of Congress of 1893. The first section provides that the real estate must be sold either at the county court house in the county where the land is, or on the premises. No discretion is given the court to change the sale to any other place. The second section, however, while it directs that personalty shall be sold as provided in the realty section, vests full discretion in the court to sell it elsewhere.

The case of *Smith* v. *Cockrill,* 6 Wall. 756, is relied on by counsel for respondent. That was a sale of real estate. The state law required appraisal before sale and a sale at not less than two-thirds the value thus fixed, both of which requirements were wholly disregarded by the marshal. The federal statute applying was the Act of Congress of 1828, c. 68, 4 Stat. 278, which provided that the forms of process, etc., should be *the same* as that used in the state courts. The requirement for appraisal of real estate and its sale at not less than two-thirds of the appraised value by a ministerial officer is much more important in protecting the rights of the judgment debtor

than the place in a sale of personalty. The case of *Bornemann* v. *Norris,* 47 Fed. 438, was also a sale of real estate, and, moreover, was a direct proceeding to quash.

Nor do we think that the quoted language of the court speaking through Mr. Justice Bradley in *Amy* v. *Watertown,* 130 U. S. 301, is in conflict with our view of the effect of these conformity sections. The question in that case was whether when the state statute provided that process could be served on a city, only by leaving the summons with the Mayor, and there was no Mayor, the the federal court could order service to be made on some one else. The court held that, under § 914, the United States courts were limited to the method of service prescribed by the state statute. In adopting a state statute as a guide to the conduct of the business of a United States court and its officers, service on a state municipal corporation specified by a state statute is a very different matter from the fixing of the place for performing the functions of the United States court and its officers. The corporation is completely the creature of a State, and it is usually within the function of the creator to say how the creature shall be brought before judicial tribunals. It was with reference to such a matter that Mr. Justice Bradley said that the statute of 1872 was peremptory, and federal courts must conform to the practice of state courts.

For the reasons given, we hold that the sale of the 250 shares of stock to the Pacific Improvement Company vested a good title.

The decree of the Supreme Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*