**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**PETTY MOTOR COMPANY,**
**Defendant-Appellee,**

and

**Colonial Ford, Incorporated, et al., Defendants.**

**No. 83–1724.**

United States Court of Appeals,
Tenth Circuit.

July 12, 1985.

Rehearing Denied Aug. 13, 1985.

Charles T. Myers, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., Dist. of Utah, Salt Lake City, Utah, and William G. Kanter, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., with him on the briefs), for plaintiff-appellant.

Wayne G. Petty of Moyle & Draper, P.C., of Salt Lake City, Utah, for defendant-appellee.

Before LOGAN, DOYLE and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal by the United States from an order of the District Court of Utah denying the United States marshal a commission for services related to sale of real property pursuant to a judicial foreclosure of a real estate mortgage. The purchaser, Petty Motor Company (Petty), paid no cash for the subject property, but by agreement of the interested parties, bid the amount of the indebtedness (including the mortgage amount) at the time of the sale. The marshal demanded a commission for conducting the sale, relying on 28 U.S.C. § 1921. Claiming the marshal was not entitled to the commission, Petty deposited the amount of the commission with the clerk of the court and promptly filed a motion for the court to determine the proper fee. In an abbreviated order, the court determined that the marshal had not fully complied with § 1921 and, thus, was not entitled to the commission. We conclude the trial court erred, and we reverse.

The foreclosure action from which the United States appeals was itself the product of multifaceted diversity litigation against Colonial Ford, Inc. (Colonial). In the only part of that litigation germane to this appeal, Ford Motor Credit Company sought judicial foreclosure of a real estate mortgage on the property of Colonial. In a decree of foreclosure following stipulation by the parties, the trial court in part ordered:

> The property described hereinafter is to be sold at public auction by the United States Marshal *in the manner prescribed by law*[1] for such sale; ... and out of the proceeds of such sale shall retain first his costs, disbursements *and commissions....*

(Emphasis added.)

Thereafter, upon resolution of the matter of priority among several creditors, the court entered a separate order of sale, which provided in part:

---

1. Whether the court meant Utah law or 28 U.S.C. § 2001 is unclear from the language of the order.

[I]T IS ORDERED ... that the land and premises mentioned and described in the said ... Decree be sold at public auction, as in said ... [foreclosure] Decree....

[T]he said United States Marshal [is] hereby commanded ... to proceed ... and to do all things *according to the terms and requirements of said ... Decree ... and the provisions of the statutes in such cases made and provided.* (Emphasis added.)

The marshal proceeded to publish and post notice of the sale and to conduct the sale itself in the same way as a judicial foreclosure would be conducted in the courts of the state of Utah.[2] Petty obtained the lien rights of Ford Motor Credit Company and used those rights in exercising a "credit bid" at the sale.

If the marshal is entitled to a commission from this transaction, his entitlement is found exclusively in 28 U.S.C. § 1921, which states:

Only the following fees of United States marshals shall be collected and taxed as costs, except as otherwise provided:

. . . .

For seizing or levying on property ... disposing of the same by sale, setoff, or otherwise and receiving and paying over money, commissions of 3 per centum on the first $1,000 of the amounts collected and 1½ per centum on the excess of any sum over $1,000....

The trial court concluded, without explanation, that because the marshal had not received or paid over money as set forth in § 1921, he was not entitled to the statutory commission.

The government contends that the trial court's conclusion is inconsistent with *Hill v. Whitlock Oil Services, Inc.,* 450 F.2d 170 (10th Cir.1971). We agree. *Hill* established several important principles, not the least of which is that § 1921 exists for the

purpose of reimbursing the federal government for services rendered to private litigants by marshals. *Hill* also reminds us that the statute was adopted to achieve uniformity of payment for these services throughout the land. Finally, *Hill* established whether the services rendered by the marshal qualify for compensation is a matter of federal, not state, law.

Petty argues that *Hill* is wrong and should not be followed. Petty postulates that § 1921 must be read in conjunction with Fed.R.Civ.P. 69(a) so that state law will define whether the marshal is entitled to a commission despite the underlying purpose of uniformity in § 1921. Fed.R.Civ.P. 69(a) provides that federal district courts should follow the "practice and procedure" of the state in which they sit in proceedings surrounding the execution of a judgment, "except that any statute of the United States governs to the extent that it is applicable." Petty finds support in cases from other circuits that have disagreed with the result in *Hill.*[3] Notwithstanding, *Hill* established the rule in this circuit and, as such, is binding upon the district court. We have reexamined *Hill* in light of the cases in other circuits and conclude that *Hill* was correctly decided and, hence, should be reaffirmed.

In *Hill* we said:

Federal, not local, law applies in the interpretation and application of federal statutes.... *The question is not the type of sale under Kansas law* but whether § 1921 authorizes a commission to a marshal for a judicial sale such as was made here.

. . . .

The controlling consideration here is legislative intent. The crux of the matter is whether Congress, by using the words "seizing or levying," intended to include judicial sales. In an execution sale, the selling officer is authorized by the writ of execution and is guided by

---

**2.** Why he did so is not disclosed in the record.

**3.** *See Travelers Insurance Co. v. Lawrence,* 509 F.2d 83 (9th Cir.1974); *James T. Barnes & Co. v.*

*United States,* 593 F.2d 352 (8th Cir.1979); *Federal Land Bank of St. Paul v. Hassler,* 595 F.2d 356 (6th Cir.1979).

the law rather than by the court. In a judicial sale, the court controls and the person making the sale acts as agent for the court.

. . . .

In the case at hand, the Marshal took control of the land under a court order to hold a foreclosure sale for the satisfaction of a judgment. The fact that he did not go on the land and take actual possession is not pertinent. Under the court order he in effect levied on the land.

450 F.2d at 173–174 (emphasis added) (citations omitted).

■ The Ninth Circuit scrutinized this conclusion in *Travelers Insurance Co. v. Lawrence*, 509 F.2d 83 (9th Cir.1974), a foreclosure case in which the district court had imposed a marshal's commission pursuant to 28 U.S.C. § 1921. The court of appeals reversed, holding that Fed.R.Civ.P. 69(a) applied to the marshal's sale and that Rule 69(a) and § 1921 are "interrelated." We disagree.

■ First, the very language of Rule 69(a) makes clear that its scope is circumscribed to execution and process in aid of execution. A judicial foreclosure by nature falls outside the realm of post-judgment satisfaction. That fact alone should obviate any consideration of Rule 69(a) in a judicial foreclosure sale.

Second, the court in *Travelers* premised applicability of Rule 69(a) on three Supreme Court cases: *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) (a case dealing with the question of whether the federal government was bound by a state coverture law in a federal court suit upon a contract); *Custer v. McCutcheon*, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1931) (a case dealing with the question of whether in a diversity action a state statute governing execution process applied to judgment executions); and *Fink v. O'Neil*, 106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196 (1882) (a case dealing with the question of whether a state law governed proceedings in levy and execution in a federal court judgment). We believe that these cases are inapposite to the issue of whether § 1921 calls for payment of the marshal following a judicial foreclosure sale.

There can be no doubt that Rule 69(a) and its statutory predecessor considered by the Supreme Court in *Custer* and *Fink* made state process applicable to *judgment execution* in federal courts. It is just as unassailable that a judicial sale on a mortgage foreclosure is not the same as execution on a judgment.

As noted by Judge Breitenstein in *Hill*, a judicial sale is within the control of the court because the court sets the standards (procedure) under which the sale will be conducted. By contrast, executions "issue by mere praecipe of the judgment creditor ... and only come under judicial supervision on complaint of either party." *Yazoo & M.V.R. v. Clarksdale*, 257 U.S. 10, 19, 42 S.Ct. 27, 29, 66 L.Ed. 104 (1921). Accordingly, to satisfy the need for standards under which the execution will proceed, Rule 69(a) has been adopted. *See* Fed.R. Civ.P. 69(a) advisory committee note.

Although Rule 69(a) contemplates the possibility of a judicially ordered sale to effect execution on a judgment, that sale is distinct from the sale of realty dealt with and governed by 28 U.S.C. § 2001. When land is sold by a foreclosure decree, the court effectively orders a "levy" of that land as that concept is embodied in 28 U.S.C. § 1921. *See Hill*, 450 F.2d at 174. We believe the same reasoning should apply to the concept of receipt and payment of money as the statute uses those terms.

Although Petty contends there could be no constructive transfer of money when a credit bid is accepted, the predicate for this contention is state law. Having disposed of the applicability of state law to federal diversity mortgage foreclosures, we find no merit in this contention. We believe the credit bid in this case was a constructive transfer of funds. *See, e.g., The Cesare Augusto*, 39 F.Supp. 751 (N.D.Cal.1941). Imposition of a requirement for actual transfer of cash in cases of this nature ignores the reality and the economic effect

of the credit transaction and thereby frustrates the intent of Congress that private parties pay the cost of the services rendered to them by the government.

■ We conclude that the procedure followed in effecting the judicial sale of land after foreclosure of a real estate mortgage should not affect whether the United States marshal is entitled to a commission under 28 U.S.C. § 1921. Instead, the determinative factors are whether the marshal has carried out the directives of the court and whether those directives effectively lead to satisfaction of § 1921's conditions in accordance with principles of federal law. In this instance, because the court's order provided for sale of real property by foreclosure and for payment of a commission to the marshal; and because the services the marshal rendered amounted to levy and seizure of property and to receipt and payment of money, the trial court erred in denying the marshal his statutory commission.

We reverse and remand, directing that the district court enter an order granting the United States marshal a commission in accordance with 28 U.S.C. § 1921.