**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1108
_____

US BANK NA, as Trustee for the Registered Holders of J.P.
Morgan Chase Commercial Mortgage Securities Corp.,
multifamily Mortgage Pass-through Certificates,
Series 2012-K18

v.

B R PENN REALTY OWNER LP,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:21-cv-00502)
District Judge: Honorable Wendy Beetlestone
_____

Argued on September 23, 2024

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*

(Opinion filed May 8, 2025)

Benjamin A. Garber **(ARGUED)**
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103

                    *Counsel for Appellant*


Paul Ort
Raymond A. Quaglia **(ARGUED)**
BALLARD SPAHR
1735 Market Street, 51st Floor
Philadelphia, PA 19103

                    *Counsel for Appellee*

---

## OPINION OF THE COURT

---

AMBRO, *Circuit Judge*

Mortgage foreclosures are typically governed by state law and litigated in state courts. So what do federal law and procedure require when a lender sues to foreclose in federal court? The answer is that lawyers' favorite: it depends.

B-R Penn Realty defaulted on a mortgage against one of its apartment buildings. Its lender sued, and the District Court issued a money judgment in the lender's favor for the amount owed. To recover on that judgment, the lender sought a foreclosure sale of the building. Penn Realty twice moved to

2

halt the sale, the District Court denied those motions, and the building was sold. Penn Realty now appeals the second of those denials, arguing it was based on reversible errors of federal and state law. We disagree, so we affirm.

## I. BACKGROUND

In 2011, B-R Penn Realty took out a $46 million loan backed by a mortgage on its Philadelphia apartment building.[1] Nearly a decade later, amid the Covid pandemic, it defaulted. U.S. Bank, Penn Realty's lender, sued to foreclose in federal court, invoking diversity jurisdiction over its "complaint in mortgage foreclosure" under Pennsylvania law. App. 1–2. After a bench trial, the District Court ruled that Penn Realty had breached the loan agreement. But it did not foreclose the mortgage. Instead, the Court entered a money judgment in U.S. Bank's favor for the amount Penn Realty owed: $51,392,086.96. Penn Realty appealed that judgment,[2] but it did not obtain a stay. This separate appeal concerns what happened next.

In September 2023, U.S. Bank, armed with the money judgment, renewed its foreclosure efforts. As required by

---

[1] Throughout, we use "apartment building" or "building" as shorthand for the full legal description of the real estate subject to the mortgage.

[2] We affirmed in an unpublished opinion. *U.S. Bank N.A. v. B-R Penn Realty Owner, LP*, No. 23-2185, 2024 WL 4284933 (3d Cir. Sept. 25, 2024).

Pennsylvania law, Pa. R. Civ. P. 3180,[3] the Bank filed a praecipe, or request, for a writ of execution, asking the U.S. Marshals to seize the apartment building so that it could be sold to satisfy the judgment. A week later, the Clerk of Court issued that writ. The Bank served it and a notice of the sale through Penn Realty's attorneys, Pa. R. Civ. P. 440(a)(1)(i), and, after finding Penn Realty's office "emptied out," App. 359, a marshal served the writ at the home of Penn Realty's sole owner.[4] His wife accepted process and signed the receipt.

U.S. Bank also fulfilled Pennsylvania's other notice requirements before the foreclosure sale, which was first scheduled for January 3, 2024.

- It filed an affidavit identifying the property to be sold, Penn Realty as the defendant in the judgment, and all known creditors and other interest holders in the property, Pa. R. Civ. P. 3129.1(b)–(c);

- It served those creditors and interest holders with notice about the judgment, property to be sold, and sale, Pa. R. Civ. P. 3129.2(c);

---

[3] The Pennsylvania Rules of Civil Procedure are codified at Title 231 of the Pennsylvania Code.

[4] Eric Blumenfeld, a real estate developer, "is the sole member and owner of B-R Penn Realty Manager LLC," the general partner of Appellant B-R Penn Realty Owner, LP. He also owns the remaining limited partnership interest in Appellant. *U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP*, No. 21-0502, 2023 WL 2330411, at \*1, n.2 (E.D. Pa. Mar. 2, 2023).

4

- At its direction, marshals posted handbills containing that same information at the U.S. Marshal's office and two locations on the apartment building's grounds, Pa. R. Civ. P. 3129.2(b)(1)–(2); and

- It published that information once a week, for four successive weeks, in the *Philadelphia Inquirer* and *Legal Intelligencer*, Pa. R. Civ. P. 3129.2(d).

In December 2023—two months after the writ of execution was issued, and less than a month before the scheduled sale—Penn Realty filed an emergency motion to quash the writ and cancel the sale. In support of that motion, and at the hearing that followed, it made essentially the three arguments it makes to us.

*First*, U.S. Bank was playing by the wrong rules. In its efforts to secure the writ and provide notice of the upcoming sale, the Bank was complying with Pennsylvania law as required by Federal Rule of Civil Procedure 69(a). That rule governs execution sales—sales that result from "writ[s] of execution," the typical way "[a] money judgment is enforced"—and applies state law by default. Fed. R. Civ. P. 69(a)(1). Insisting that "[t]he judgment entered by the Court . . . [wa]s not a money judgment," Penn Realty argued that U.S. Bank instead received a judgment "for mortgage foreclosure." App. 365. In its view, the Bank was working toward a *judicial* sale of the building—a sale ordered and directed by the Court—so the sale was governed by the relevant federal law of judicial sales, found in 28 U.S.C. § 2001 *et seq. See id.* § 2001(a) ("Any realty or interest therein sold

5

under any order or decree of" any federal court "shall be sold . . . upon such terms and conditions as the court directs.").

*Second*, "because [U.S. Bank had] neither sought nor received any order from the Court directing the sale of" the apartment building under § 2001, the sale could not proceed as scheduled. App. 366.

*Third*, even if Rule 69(a) did apply and Pennsylvania law governed the sale, service was defective, because state law did not permit service of the writ on the wife of Penn Realty's owner.

Though these arguments at the hearing crystalized the issues, they resolved little. Each party and the District Court offered different interpretations of whether and how § 2001, Rule 69(a), and federal and Pennsylvania law applied to the upcoming sale. Nor did the Court rule on whether service was proper. Instead, it denied the motion without prejudice, allowing the parties more time to develop the issues (and U.S. Bank more time to ensure compliance before the sale). The Bank agreed to continue the sale, and the Court announced it would consider a second motion to quash after the sale was rescheduled.

The Bank reset the sale for January 22, 2024, and Penn Realty filed that second motion to quash, repeating its prior arguments. After another hearing, the District Court denied the motion. It held that (1) U.S. Bank was right to proceed under Rule 69(a), regardless whether the underlying judgment was a mortgage foreclosure or a money judgment; (2) § 2001 also applied, and the Clerk of Court's issuance of the writ of execution satisfied its court-order requirement; and (3) the

6

Bank properly served the writ under Pennsylvania law. The building was sold on January 22, 2024.

Penn Realty timely appealed the District Court's denial of its second motion to quash, seeking a reversal of the sale. Once more—now to us—it argues that Rule 69(a), which governs executions on money judgments, does not apply; Section 2001, which governs judicial sales, does, but its requirements were not met; and service was not proper under Pennsylvania law.

We uphold the sale and affirm the District Court's denial of the motion to quash, but we do not share in all the Court's reasoning. This was an execution sale, so Rule 69(a) applies, not § 2001. U.S. Bank complied with the Rule's requirements, which import Pennsylvania law. That means service was proper. We write precedentially to resolve the central issue in this case: the vexing difference between an execution sale under Rule 69(a) and a judicial sale under § 2001.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this diversity action under 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291, as the District Court's denial of Penn Realty's motion was a final order.

We review a district court's order on a motion to quash for abuse of discretion, but we review de novo the court's legal conclusions therein. *Gillette v. Warden Golden Grove Adult Corr. Facility*, 109 F.4th 145, 154–55 (3d Cir. 2024).

# III. ANALYSIS

To make sense of the knotted arguments before us, we pull on a few threads. *First*, a primer on Pennsylvania mortgage and foreclosure law will clarify how U.S. Bank ended up with a money judgment despite suing for mortgage foreclosure. *Second*, we confirm that the sale of the building was an execution sale to recover against that judgment. From there, we explain that, in federal court, execution sales to enforce money judgments are governed by Federal Rule of Civil Procedure 69(a), so the federal law of judicial sales, 28 U.S.C. § 2001 *et seq.*, does not apply. *Third*, we verify that Penn Realty's execution sale of the building fully complied with Pennsylvania law, as required by Rule 69(a).

## A. Though U.S. Bank sought a judgment of mortgage foreclosure, it received a money judgment because the Court entered judgment on the loan, not the mortgage.

What is colloquially known as a "mortgage" describes a familiar financial arrangement: a loan from a lender, usually for the purchase of real estate, paid back over time, or else the lender takes the real estate. In practice, this comprises two distinct agreements.[5]

The first is the loan. A lender, usually a bank, loans the borrower money to buy real estate. The parties form a contract:

---

[5] We simplify here. What we call "a loan" often involves more than one document. The *promissory note* sets the financial terms of the loan and binds the borrower to repay. A separate *loan agreement* imposes additional terms on the lender and borrower. *E.g.*, *Germantown Sav. Bank v. Talacki*, 657 A.2d

the lender will provide a sum of money at a certain interest rate, and the borrower is obligated to pay it back, in full and on time.

The second is the mortgage. It ensures the borrower "perform[s]" that loan "obligation" by giving the lender a lien on the real estate. *Stillwater Lakes Civic Ass'n v. Krawitz*, 772 A.2d 118, 121 (Pa. Commw. Ct. 2001). If instead the borrower defaults on the loan, "the mortgage entitles the [lender] to pursue foreclosure"—"the process in which property [subject to] a mortgage is sold to pay off the loan balance due." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 469 (2019) (quotation omitted).

Foreclosure typically begins as a lawsuit and ends as an auction.[6] In Pennsylvania, a foreclosure suit "is strictly an *in*

1285, 1287 n.2 (Pa. Super. Ct. 1995) ("In addition to the Mortgage, several other instruments were entered into[,] including a Promissory Note [and] Loan Agreement . . . ."). Mortgages, too, take various forms, each a different bargain for interests in the real estate. Comment, Restatement (Third) of Property (Mortgages) § 1.1 (1997) [Restatement]. All are beyond this opinion.

[6] The word "foreclosure," like "mortgage," maintains a narrow legal meaning despite broader everyday usage. When a borrower defaults on a loan, the lender may "accelerate" repayment and declare the full balance due. *E.g.*, *Bell Fed. Sav. & Loan Ass'n of Bellevue v. Laura Lanes, Inc.*, 435 A.2d 1285, 1286 (Pa. Super. Ct. 1981). If the borrower fails to pay that large sum, the lender will proceed to foreclosure. Yet from acceleration until the foreclosure sale is complete—a process that can take months—the borrower has the right to pay the balance, cure the default, and "redeem" the property from the

*rem*" proceeding by the lender against the real estate, and its "purpose is solely to effect" a sale "of the mortgaged property." *Nicholas v. Hofmann*, 158 A.3d 675, 696 (Pa. Super. Ct. 2017) (quotation omitted). If the lender wins and obtains a judgment of mortgage foreclosure, the property will be sold at a foreclosure sale, and the proceeds will be applied to offset what the borrower owes: "the debt, interest, and costs which are due, or have accrued to, the [lender as] judgment creditor." *GMAC Mortg. Corp. of Pa. v. Buchanan*, 929 A.2d 1164, 1167 (Pa. Super. Ct. 2007).

But if a lender is threatening foreclosure because the borrower failed to pay, that means the borrower breached the terms of the loan. The lender may instead sue for that. "Although foreclosing on the . . . mortgaged property is the usual course of action taken by a [lender, an] action for a breach of the contract terms in the [promissory] note and [loan] agreement is valid and proper." *Fayette Bank & Tr. Co. v. Hercik*, 13 Pa. D. & C. 4th 118, 120 (Com. Pl. 1991) (citing *Beaver Cnty. Bldg. & Loan Ass'n v. Winowich*, 187 A. 481 (Pa. 1936)). Unlike an *in rem* foreclosure, the lender's suit for breach of contract will be *in personam* against the borrower, and a prevailing lender will be awarded a money judgment for the debt. *Nicholas*, 158 A.3d at 696. To satisfy that judgment,

---

mortgage. From English Chancery practice, this is known as the equity of redemption. Still today, to foreclose a mortgage is to *foreclose the borrower's equitable right of redemption* and extinguish any chance of keeping the property. Restatement § 3.1. In Pennsylvania, the moment of foreclosure is quite precise: the instant "the auctioneer's hammer falls" at the foreclosure sale. 15 West's Pa. Prac., Mortgages § 5:5 (3d ed. 2024).

the lender may seize—and if needed, sell—the borrower's property by a process called execution. Thus a lender who seeks to collect on a money judgment "could resort to all the property of the debtor not protected [from execution], and for this purpose could issue one execution after another until the full amount of the debt was realized." *Beaver Cnty.*, 187 A. at 484.

When it is available, most mortgage lenders take the more direct route to recover their money: foreclosure. It appears U.S. Bank meant to do so when it filed a "complaint in mortgage foreclosure," App. 1, asserting it was "authorized by the [m]ortgage and by Pennsylvania law to foreclose the [m]ortgage," App. 8. And before us, Penn Realty urges the same: "Because the only claim asserted in this action is one for mortgage foreclosure, the only judgment that can exist," and the one the District Court issued, was "for mortgage foreclosure and not for a money judgment." Opening Br. 9. That is wrong twice.

In its complaint, alongside the claim for mortgage foreclosure, U.S. Bank also sought judgment "against [Penn Realty] in the amount of $46,290,900.25," plus any interest, fees, and costs "recoverable under the Loan Documents." App. 9. For support, it offered detailed allegations about the origination and assignment of the loan, its terms and Penn Realty's defaults, and the parties' forbearance agreement. And for evidence, it offered Exhibit A: a copy of the loan. True, the complaint also alleges a breach of the mortgage. But when a lender files a complaint in mortgage foreclosure that "recites" the "terms" of the loan, "attaches [the loan] as an exhibit to the complaint," and seeks judgment against the borrower "in a specified amount," the action may be construed as both *in rem*

11

against the property and *in personam* against the borrower. *Insilco Corp. v. Rayburn*, 543 A.2d 120, 124 (Pa. Super. Ct. 1988). Usually this is forbidden. "An action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce [the loan]." *Id.* at 123; *see also* Pa. R. Civ. P. 1141(a) ("[A]n action to foreclose a mortgage . . . shall not include an action to enforce a personal liability."). Yet if the borrower "waives any objection" to the combined actions, the lender can proceed on both. *Insilco*, 543 A.2d at 123.

Here, after U.S. Bank combined the actions in its complaint, the parties spent two years litigating Penn Realty's liability on the loan. Because Penn Realty "raised no objection to the form of the complaint until after judgment was entered," it waived its right to object to the combined actions and failed to "preserve[] this issue for appeal." *Kretschman v. Stoll*, 352 A.2d 439, 442 (Pa. Super. Ct. 1975).

All told, the Court ruled that Penn Realty had breached the loan and owed a balance, so it entered a $51 million money judgment in the Bank's favor. Though that judgment granted U.S. Bank the relief it sought on the loan, it did not foreclose the mortgage. In fact, the District Court never entered a judgment in mortgage foreclosure, and after the money judgment issued, U.S. Bank never asked for one. As a result, the judgment that exists—the *only* judgment that exists—is the money judgment. Perhaps that is an unintuitive outcome of the Bank's so-called "complaint in mortgage foreclosure," but it was the outcome here.[7]

---

[7] We emphasize that this money judgment is distinct from the typical *in rem* foreclosure judgment that states the amount

12

**B. U.S. Bank enforced its money judgment through an execution sale, which was governed by Federal Rule of Civil Procedure 69(a), not the federal law of judicial sales, 28 U.S.C. § 2001 *et seq*.**

In federal courts, a "money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1). The "procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *Id.*

The sale of the building, in satisfaction of the money judgment, was an execution sale. It follows that 28 U.S.C. § 2001 *et seq.*, which governs federal judicial sales, did not apply.

**1. The sale of the building was an execution sale.**

Execution sales are "sales under common-law executions which issue by mere praecipe of the judgment creditor on the judgment without order of the court, and in which the levy and sale of the marshal are ministerial." *Yazoo*

---

owed in default. In the Commonwealth, all judgments of mortgage foreclosure must be entered for a "sum of money" owed. 15 West's Pa. Prac., Mortgages § 2:9 n.1 (3d ed. 2024) (citing *Landau v. W. Pa. Nat'l Bank*, 282 A.2d 335, 340 (Pa. 1971)). But the sum certain of an *in rem* foreclosure judgment is enforceable only against the property, not against the debtor. *See Green Tree Consumer Disc. Co. v. Newton*, 909 A.2d 811, 815–16 (Pa. Super. Ct. 2006); *Insilco*, 543 A.2d at 123. By contrast, the money judgment here resulted from U.S. Bank's *in personam* action on the loan.

*& M.V.R. Co. v. City of Clarksdale*, 257 U.S. 10, 19 (1921). These sales are distinct from *judicial sales*, which are "conducted pursuant to directions of the court and the federal statutes." *United States v. Branch Coal Corp.*, 390 F.2d 7, 9 (3d Cir. 1968); *see also Yazoo*, 257 U.S. at 19 (explaining that judicial sales are "made under order or decree of the court and requir[e] confirmation by the court for their validity").

Here, even Penn Realty agrees "there [wa]s no order authorizing or directing" a sale of the building. Opening Br. 6. Instead, to satisfy the money judgment in its favor, U.S. Bank executed against the building and sold it. *Beaver Cnty.*, 187 A. at 484. It filed a praecipe for a writ of execution, the Clerk of Court issued that writ, and the Bank enlisted the marshals for "ministerial" assistance in "levy and sale." *Yazoo*, 257 U.S. at 19. These are the essential steps of an execution sale. *Id.*

In any event, though the parties dispute the type of sale, they do not dispute its effect. This execution sale foreclosed the mortgage as a judicial sale would. *See* n.6, above. Pennsylvania law allows for mortgage foreclosure by execution when "judgment is entered on" the loan, "the obligation secured by the mortgage." Note, Pa. R. Civ. P. 3180(a). That is what happened here. The mortgage securing the loan "entitle[d]" U.S. Bank to pursue foreclosure, so the apartment building was "sold to pay off the loan balance due" and the mortgage was foreclosed. *Obduskey*, 586 U.S. at 469 (quotation omitted). In this case, the foreclosure sale was an execution sale, not a judicial sale.

14

**2. Because the execution sale of the apartment building was not a judicial sale, 28 U.S.C. § 2001 did not apply to impose additional requirements.**

Though federal law may bear on an execution sale "to the extent it applies," Fed. R. Civ. P. 69(a)(1), no such law applied to the sale of the building. Even so, the parties and the District Court invoked 28 U.S.C. § 2001 *et seq.*, which governs judicial sales. We clarify its limited scope—and inapplicability here.

"Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales." *Branch Coal*, 390 F.2d at 10. That authorization lies in § 2001, which applies to the sale of "[a]ny realty or interest therein sold under any order or decree of any court of the United States"—in fewer words, federal judicial sales. § 2001(a). And when setting the terms and conditions of a judicial sale, courts are guided by §§ 2002–07, which govern notice, appraisal, the role of the marshals and other federal officials, and so on. (For ease of reading, we shorthand these statutes as "§ 2001" hereafter.)

But we emphasize, backed by a century of case law, that § 2001 applies solely to judicial sales, a category that does not sweep in every sale resulting from a lawsuit. Some sales, like the one here, are execution sales. As "the language of [§ 2001] limits its application to judicial sales made under order or decree of the court and requiring confirmation by the court for their validity," § 2001 does not apply to execution sales, which are neither court-ordered nor court-confirmed. *Yazoo*, 257 U.S. at 19 (interpreting § 2001's predecessor statutes); *see also Weir v. United States*, 339 F.2d 82, 85 (8th Cir. 1964) (holding that

15

Arkansas law, not § 2001, governed the execution sale of appellant's farmland because "it is manifest from the language of [§ 2001] that it is clearly made applicable only to 'judicial sales'"); *Prudential Ins. Co. of Am. v. Land Ests.*, 90 F.2d 457, 458 (2d Cir. 1937) (applying predecessor statutes and holding that the sale of certain property, in lieu of foreclosure, "was not a judicial sale" because it was not "made under order or decree of the court"); *Champion Box Co. v. Manatee Crate Co.*, 75 F.2d 340, 342 (5th Cir. 1935) (same) (interpreting predecessor statutes).

The parties and the District Court blunt this sharp distinction between execution sales and judicial sales, reading two out-of-circuit foreclosure cases—*United States v. Petty Motor Company*, 767 F.2d 712 (10th Cir. 1985), and *Travelers Insurance v. Lawrence*, 509 F.2d 83 (9th Cir. 1974)—to offer more than they do.

To be sure, it is "unassailable that a judicial sale on a mortgage foreclosure is not the same as execution on a [money] judgment." *Petty Motor*, 767 F.2d at 715. In the former, the sale is ordered by and thus "within the control of the court"; in the latter, we repeat, the sale is executed after "praecipe of the judgment creditor," with the marshals serving only a ministerial role. *Id.* (quoting *Yazoo*, 257 U.S. at 19). *Petty Motor* involved the former. Following "a judicial foreclosure of a real estate mortgage," the court "entered a *separate order of sale*," and the property was sold. *Id.* at 713 (emphasis added). That was a judicial sale, as it occurred under "order . . . of [a] court of the United States." § 2001(a).

Perhaps more relevant here, the *Petty Motor* court concluded that Rule 69(a) could never apply to foreclosures by

16

judicial sale, as the Rule reached only "*judgment execution[s]*," like execution sales, "in federal courts." 767 F.2d at 715 (emphasis in original). This decision split from *Travelers Insurance*, which held that Rule 69(a) sometimes may apply to foreclosures by judicial sales. There, alongside a "judgment and decree" of mortgage foreclosure under Oregon law, the district court ordered the property sold—a judicial sale. 509 F.2d at 85. But on appeal, unlike the Tenth Circuit in *Petty Motor*, the Ninth Circuit held that both Rule 69(a) and federal statutes applied to the judicial sale, and Oregon law controlled unless displaced by federal law. *Id.* at 87–88.

Here, referring to *Petty Motor* and *Travelers Insurance*, the District Court correctly observed that "courts are split on whether Rule 69(a), which discusses money judgments, reaches mortgage foreclosures." *U.S. Bank Nat'l Ass'n v. B-R Penn Realty Owner, LP*, No. 21-0502, 2024 WL 169574, at *4 (E.D. Pa. Jan. 16, 2024) (cleaned up). Before us, the parties argue from the same premise. But the true split between *Petty Motor* and *Travelers Insurance* is what law applies to judicial sales, not what procedure applies to mortgage foreclosures. In this case, we must decide whether § 2001 applied—through Rule 69(a)—to the *execution* sale of the apartment building. We hold it did not, because § 2001 applies only to judicial sales.[8]

---

[8] Once more, there is no question that § 2001 applies to judicial sales. *Branch Coal*, 390 F.2d at 9–10. But we hold open the related question of whether Rule 69(a) might. *Contra United States v. Wiegman*, 111 F.3d 74, 77 (8th Cir. 1997) (describing our decision in *Branch Coal* as holding "that a judicial sale is not governed by Rule 69(a)"). Rule 69(a) contemplates merely that "[a] money judgment is enforced" by an execution sale

The District Court held otherwise, ruling that both Rule 69(a) and § 2001 applied, U.S. Bank had satisfied the requirements of Rule 69(a), and the Clerk's issuance of the writ met § 2001's requirement for a court order. As we will next explain, the Court was right about the application of Rule 69(a) and Penn Realty's compliance with it, but we disagree that § 2001 applied to this execution sale.

Even so, our charge from Congress is "to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)). That is, we disregard harmless errors. We do so here, agreeing with Penn Realty's concession at argument that it was "absolutely not" prejudiced by the District Court's misapplication of § 2001.

---

"unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1). We see no reason why a federal money-judgment creditor could not seek a court-ordered judicial sale to satisfy the judgment. (Doing so, though, would seem to require an inefficient side-step around state-law execution.) Were that the case, the sale—a judicial sale to enforce a money judgment—would "accord with the procedure of the state where the court is located, but a federal statute [would] govern[] to the extent it applies." Fed. R. Civ. P. 69(a)(1). The applicable federal statute would be § 2001. When faced with a case that requires us to decide this point, we will. Today, we need resolve only that § 2001 does not apply to execution sales.

18

**C. U.S. Bank complied with all requirements for an execution sale under Pennsylvania law.**

As no federal law applied, the execution sale under Rule 69(a) needed only to comply "with the procedure of the state where the court is located"—Pennsylvania. Fed. R. Civ. P. 69(a)(1). Relevant here, the Commonwealth's Rules of Civil Procedure impose requirements for service of process, Pa. R. Civ. P. 400 *et seq.*, the enforcement of money judgments, Pa. R. Civ. P. 3101 *et seq.*, and execution of judgments against mortgaged real estate, Pa. R. Civ. P. 3180 *et seq.*

Before us, as in the District Court, Penn Realty faults only the Bank's service of the writ; it "does not otherwise challenge U.S. Bank's compliance with Pennsylvania's myriad rules for executing judgments." 2024 WL 169574, at *3 n.1. Because U.S. Bank did not properly serve the writ on Penn Realty, it argues, we must reverse the sale. But Pennsylvania law did not require that Penn Realty be served with the writ at all, so we reject both the premise and the remedy.

In Pennsylvania, service of a writ of execution against mortgaged real estate "shall be made by the sheriff noting upon the writ a brief description of the mortgaged property and a statement that the sheriff has levied upon defendant's interest therein." Pa. R. Civ. P. 3182. "[F]or the execution of judgments in the federal system," of course, the U.S. Marshals are appropriately substituted for the local sheriff. *LNC Invs. v. Dem. Rep. Congo*, 69 F. Supp. 2d 607, 613 n.8 (D. Del. 1999) (citing *Yazoo*, 257 U.S. at 24–25). But "[s]ervice of the writ upon the mortgagor or real owner is *not* required"; only "notice of the sale" is, in compliance with Rule 3129.1. Note, Pa. R. Civ. P. 3182 (emphasis added). Penn Realty has no

19

answer for this. Nor does it contend the Bank violated the notice requirements of Rule 3129.1, which incorporates neighboring Rule 3129.2.

Rule 3129.2 required that Penn Realty be served not with the writ, but with *notice of the sale*. Pa. R. Civ. P. 3129.2(c)(1). It was. Penn Realty was a "defendant in the judgment" and had "entered an appearance," so U.S. Bank properly served notice "in the manner provided by Rule 440." Pa. R. Civ. P. 3129.2(c)(1)(ii). That Rule permits service of non-original process (like a notice of sale) "by handling or mailing a copy to or leaving a copy for each party at the address of the party's attorney of record." Pa. R. Civ. P. 440(a)(1)(i). U.S. Bank did so. We read Pennsylvania law to require no more, and the Commonwealth's courts agree. *JP Morgan Chase Bank N.A. v. Palumbo*, No. 2413 EDA 2019, 2020 WL 914726, at *3 (Pa. Super. Ct. Feb. 25, 2020) (holding that lender who mailed borrower's counsel a notice of sale did not need to serve the writ to "satisfy the issuance, service, and notice requirements of a writ of execution for a mortgage foreclosure" under Pennsylvania law).

This may all be beside the point. "The notice requirements of [Rules] 3129.1, 3129.2, and 3129.3 were intended to protect fundamental rights of due process by insuring that persons with an interest in real estate would receive adequate notice before being deprived of their property." *First E. Bank, N.A. v. Campstead, Inc.*, 637 A.2d 1364, 1366 (Pa. Super. Ct. 1994). We underscore "adequate": the notice must be "*reasonably* calculated to inform interested parties of the pending action" and provide "the information necessary to provide an opportunity to present objections." *Id.* (emphasis added) (quotation omitted). Penn Realty says the

Bank's efforts at service were "ineffective," Opening Br. 17, but it identifies no injury or prejudice. Nor could it—there was none. Penn Realty filed two motions to quash the writ and attended two hearings in support, making plain it had "adequate notice" of the sale and "opportunity[ies] to present objections." *First E. Bank*, 637 A.2d at 1366. It nonetheless asks us to reverse the sale that it knew about, argued against, and moved twice to cancel—all because, it offers, the wrong person was served with the writ. Even if the law required that the writ be served, we would refuse Penn Realty's invitation to set aside the sale. Due process does not penalize foot faults with forfeiture.

At bottom, U.S. Bank complied with Pennsylvania law as required by Rule 69(a), so we affirm the District Court's ruling.

\*　　\*　　\*

U.S. Bank sued for a judgment in mortgage foreclosure. What it received was a money judgment, which it enforced through an execution sale of Penn Realty's apartment building. Federal Rule of Civil Procedure 69(a) required U.S. Bank to comply with all applicable Pennsylvania law, and it did.

For these reasons, we uphold the sale and affirm the District Court's denial of Penn Realty's motion to quash.