**UNITED STATES of America**

v.

**Frank CAPOBIANCO, et al.**

**Civ. A. No. 80–2500.**

United States District Court,
E.D. Pennsylvania.

Jan. 7, 1987.

Boyd G. Hixson, Allentown, Pa., for plaintiff.

P.A. Scott-Clayton, Trial Atty., U.S. Dept. Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This Memorandum and Order represents another chapter in the continuing saga of the government's attempt to collect more than $194,000 in unpaid taxes owed by Frank Capobianco. The convoluted history and surprising developments are set forth in detail in this Court's prior Memorandum and Order. *United States of America v. Frank Capobianco, et al.,* —— F.Supp. —— No. 80–2500, slip op. (E.D.Pa. November 20, 1984).

At issue then, as now, was the status of a property on Madison Street in Allentown, Pennsylvania. In mid–1983, all parties remaining in the case believed that the property had been sold pursuant to a foreclosure of the mortgage held by Onofrio Capobianco. Pursuant to that belief, Onofrio's estate, recognizing the validity of the government's tax lien on the property, even though it had been sold, agreed to a summary judgment against it in the amount of $7,449.50. It later developed, however, that Onofrio himself had purchased the property at the foreclosure sale through an attorney, Robert McFadden. Hence, no distribution had been made to Onofrio as a result of the sale and his estate was no longer willing to make a cash payment. It did not, however, oppose the government's subsequent motion for summary judgment which sought the sale of the Madison Street property and the entire proceeds thereof in satisfaction of the tax liens.

After summary judgment had been granted, Michael Capobianco sought to enter the case and assert his purported interest in the Madison Street property. For reasons previously stated, we held that Michael had no interest in the property and thus denied his motion to intervene as a defendant. That decision resulted in an appeal. Before it was decided, however, both the United States and Michael Capobianco agreed to have the case remanded for the purpose of determining Michael Capobianco's interest in the property. Accordingly, we permitted his intervention in 1985. In April, 1986, we denied the government's motion to dismiss Michael's counter-claim challenging the continuing validity of the government's tax liens against the Madison Street property.

Now before the Court is the government's motion for summary judgment, once again seeking foreclosure of its liens

against the Madison Street property. Michael Capobianco opposes the motion, contending that the liens were discharged by the mortgage foreclosure sale held in 1981.

It is obvious that the threshold question at this juncture is whether Michael Capobianco owns the Madison Street property. If he does not, he has no standing to challenge the validity of the government's tax liens against it. The estate of Onofrio Capobianco agreed to recognize the liens in 1984, although it repudiated that portion of the agreement which called for a cash payment to the government. As noted, the estate did not oppose the government's later motion to foreclose its liens against the Madison Street property and obtain the entire proceeds of the sale thereof.

Although we now have a more extensive record available, the additional information supplied to the Court through the depositions of Robert McFadden and James Williams and the affidavits of Anthony Capobianco [1] merely confirm the correctness of our prior determination that Michael Capobianco does not own the disputed property.

According to the testimony of Robert McFadden, the attorney who purchased the property at a mortgage foreclosure sale held in May, 1981, Onofrio and Frank Capobianco, who were brothers, directed McFadden to execute on a previously obtained foreclosure of the mortgage that Onofrio held against Frank's Madison Street property. (McFadden Deposition at 31). At Onofrio's direction, McFadden bid on the property at the sale and bought it for $25,-000. (*Id.* at 10). After exceptions to the sale were dismissed in September, 1982, the Sheriff of Lehigh County contacted McFadden to inquire as to whose name should go on the deed. Pursuant to Onofrio's instruction, McFadden directed the Sheriff to put Michael Capobianco's name on the deed and send the deed to McFadden. Thereafter, the deed was recorded according to

established procedures relating to mortgage foreclosure sales and the deed was mailed to Robert McFadden. (*Id.* at 45–48). McFadden testified that his final conversation with Onofrio Capobianco with respect to the Madison Street property occurred in September, 1982, when he was directed to have Michael's name placed on the deed. (*Id.*) McFadden also testified that Onofrio never told him what to do with the deed and that he kept it in his files where it still remains, and never told anyone, including Michael, about it. (*Id.* at 49–42). Onofrio died in December, 1982.

Although Michael did not become aware of his record title to the property until the summer of 1984, and the deed is still in the possession of Robert McFadden, he contends that delivery of the deed to McFadden at Onofrio's request constitutes constructive delivery to him. Thus, he contends that he now owns the property, and further contends that the government's tax liens were discharged by the 1981 sale.

Contrary to Michael's argument that there are disputed factual issues with respect to Onofrio's donative intent, the sole issue for resolution is a legal one: do the foregoing undisputed facts establish constructive delivery of the deed to Michael under the law of Pennsylvania?

In *Fiore v. Fiore*, 405 Pa. 303, 174 A.2d 858 (1961), the Pennsylvania Supreme Court reiterated that one of the indispensable requirements for establishing a grantee's ownership of gift property is legal delivery of the deed to him. While delivery need not be actual, and the grantee need not know that he was deeded the property, placing the deed in the hands of a third person, standing alone, is not effective as constructive legal delivery. "In order for the delivery to be effectual and result in a culmination of the transition of the title, there must be *an express and definite instruction* that the deed is to be given to the grantee then or at some future time[.]",

---

1. The Court has not ruled on the government's motion to strike the affidavit of Anthony Capobianco. While the motion is meritorious and the affidavit is not, it does nothing to support

Michael's claim to ownership of the disputed property, in light of our analysis of the only relevant legal issue before us.

*Id.* (emphasis in original) (citations omitted).

■ Here, it is undisputed that there was no such instruction. Moreover, the deed remains in the possession of the third party, McFadden. Since there has not been legal delivery of the deed, title to the property has never passed to Michael Capobianco. Further, since Onofrio Capobianco is now deceased, there can be no instruction and no delivery.

While Michael seeks to focus the Court's attention on issues of fact with respect to donative intent, that aspect of whether there was an effective gift of the property from Onofrio to Michael is rendered irrelevant by the failure of delivery. Thus, Michael's assertion that the government failed to move for summary judgment on purely legal grounds is without merit.

In an ordinary case, our disposition of the delivery issue would end the matter. An additional issue, such as the validity of the government's tax liens on the disputed property, would not normally be addressed in that it is not necessary for a decision on the motion.[2] This case, however, has not been ordinary. The mere fact that the matter has been pending for more than six years attests to its unusual character. Although the claims of Onofrio Capobianco's estate have already been adjudicated, the Court would not find it surprising if the executors, heirs, devisees or beneficiaries were now to seek further delays in the foreclosure of the liens. There seems to be no shortage of Capobianco relatives to come forward, sequentially, claiming that someone's purported interest in the property has not been properly taken into account. Consequently, we find it necessary to address the issue of whether the government's tax liens were discharged by the sale of the property pursuant to Onofrio's execution on the mortgage foreclosure in 1981.

As with the "donative intent" issue discussed earlier, defendant, Michael Capobianco, here seeks to inject irrelevant concerns into the resolution of a fairly simple issue, evidently hoping to postpone judgment day once again. We see no reason to discuss these arguments which have no relevance to the straightforward issue before the Court.

The procedures available to discharge a junior tax lien of the United States in the foreclosure of a prior mortgage are set forth in two statutes: 28 U.S.C. § 2410(c) and 26 U.S.C. § 7425(b). It is undisputed that Onofrio Capobianco began foreclosure proceedings with respect to the Madison Street property in June, 1977. The United States was joined in the action pursuant to 28 U.S.C. § 2410(c) and filed an answer to the complaint in which it interposed no objection to the sale of the premises, provided that the sale be a judicial sale, as required by § 2410(c).

Certain characteristics have been held to distinguish a judicial sale from a non-judicial sale. These include an order by a court directing sale and confirmation by the court for validity. *Yazoo & Mississippi R. Co. v. Clarksdale,* 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921); *A.H. and R.S. Coal Corp. v. United States,* 461 F.Supp. 752 (W.D.Pa.1978); *Baton Coal Company Appeal,* 365 Pa. 519, 76 A.2d 194 (1950). Execution of judgment pursuant to a mortgage foreclosure action in Pennsylvania is governed by Pa.R.Civ.P. 3180–3183. These rules incorporate, *inter alia,* Rules 3103(a) and (e) and 3135, governing enforcement of money judgments generally. Those rules establish the character of the execution sale as non-judicial. Rule 3103 provides for sale at the instigation of the plaintiff and Rule 3135 expressly provides that the sale does not require confirmation by the court for validity.

---

**2.** As noted, summary judgment has already been entered against the estate of Onofrio Capobianco and the executors thereof. Since Onofrio apparently intended to give the Madison Street property to Michael, but failed to effect that intent by a legally proper delivery of the deed to him, the property must have reverted to Onofrio's estate. From thence it was awarded to the government for foreclosure of its tax liens by the Court's order of November 20, 1984. The estate and the executors had the opportunity to assert a claim to the property but did not do so.

Contrary to defendant's alarmist contentions, however, adherence to the requirement of a judicial sale pursuant to § 2410(c) is not the only means by which the government's tax liens may be discharged. If a judicial sale is not to be held, local law pertaining to the discharge of junior liens may be invoked against the United States, provided that proper statutory notice of the sale has been given to the government. 26 U.S.C. § 7425(b). The requirements for proper notice, set forth in 26 U.S.C. § 7425(c)(1), are that the Secretary of the Treasury or his delegate receive written notice of the sale by registered or certified mail or personal service not less than twenty-five days prior to the sale.

The deposition of James Williams, the deputy sheriff then responsible for conducting sheriff's sales in Lehigh County, establishes that notice was sent by his office to the Attorney General of the United States and the United States Attorney for the Eastern District of Pennsylvania within twenty (20) days of the sale as required by state law notice provisions. (Williams deposition at 25–27). Moreover, Robert McFadden, Onofrio's attorney, did not send notice to anyone at any time. (McFadden deposition at 42). Thus, the record clearly establishes that the requirements of § 7425, pursuant to which the tax liens might have been discharged, were not fulfilled.

Although the United States was joined as a party to the mortgage foreclosure action as permitted by 28 U.S.C. § 2410(c), the plaintiff's failure to seek a judicial sale, required by that statute for discharge of the liens, made operative the provisions of 26 U.S.C. § 7425(b) and (c). As noted, plaintiff also failed to fulfill the requirements for discharge of the liens set forth in that statute. Consequently, the liens remain undisturbed no matter who, now or in the future, may claim an interest in the Madison Street property.

Once again, the Court concludes that summary judgment in favor of the government is amply justified.

ORDER

AND NOW, this 7th day of January, 1987, upon consideration of the plaintiff's motion for summary judgment and the defendant's response thereto, IT IS ORDERED that the motion is GRANTED and judgment is entered in favor of the plaintiff and against the defendant, Michael Capobianco.

IT IS FURTHER ORDERED that the tax liens of the United States of America are valid and subsisting liens against the Madison Street property and that those liens shall be foreclosed against said property.