**In re: SMALL BUSINESS LOAN SOURCE, INC.**

v.

**F/V ST. MARY II, Official Number 1121027, Her Tackle, Apparel, Appurtenances, etc., in Rem, et al.**

No. CIV.A.04–681.

United States District Court,
E.D. Louisiana.

March 15, 2005.

W. Gerald Gaudet, Mary McCrory Hamilton, Voorhies & Labbe, Lafayette, LA, for Small Business Loan Source, Inc.

Stevens E. Moore, U.S. Attorney's Office, New Orleans, LA, for Theophile Duroncelet US Marshal for EDLA.

### ORDER AND REASONS

VANCE, District Judge.

Plaintiff Small Business Loan Source moves the Court to set the U.S. Marshal's commission for the sale of the F/V St. Mary II. For the following reasons, the Court DENIES SBLS's motion to the extent that SBLS moves the Court to set the Marshal's commission at a rate lower than that requested by the Marshal.

## I. BACKGROUND

On or about November 26, 2001, Hien Le executed and delivered a promissory note to SBLS. The note was in the amount of $780,000.00 with monthly installments due beginning January 5, 2002 and extending through November 26, 2016. If Le defaulted, all remaining principal plus accrued interest would be due and payable immediately. On or about November 26, 2001, Le executed a Preferred Ship Mortgage in favor of SBLS on the F/V St. Mary II to secure payment of the promissory note. Le defaulted on the promissory note, and he further breached his agreement in the note by abandoning and failing to protect the vessel. When Le abandoned the vessel, there was due an unpaid principal sum of $737,968.76 plus accrued interest in the amount of $24,838.21, and late fees in the amount of $1,062.30.

On March 9, 2004, this Court authorized the arrest of the F/V St. Mary II. On May 6, 2001, U.S. Marshal Theophile A. Duroncelet sold the F/V St. Mary II at auction to SBLS. SBLS submitted a credit bid in the amount of $75,000.00 for the vessel. SBLS was the highest bidder at the auction. Now SBLS moves the Court set the U.S. Marshal's commission.[1] Specifically,

---

1. SBLS also moved the Court to confirm the sale of the vessel. The Court did so on De-

SBLS moves the Court to calculate the Marshal's commission on the basis of its $75,000.00 credit bid. This results in a commission of $1,140.00. The U.S. Marshal intervened in the action to oppose SBLS's motion to the extent that SBLS moved the Court to set the U.S. Marshal's commission at $1,140.00. The Marshal contends the proper commission is $11,085.00. According to the Marshal, the Court should look to the appraised value of the vessel, which is $738,000.00, to calculate the commission, not the amount of the credit bid.

## II. DISCUSSION

### A. Law and Regulations Governing Calculation of the Marshal's Commission

*(1) Section 1921*

◼ Under 28 U.S.C. § 1921(c)(1), the U.S. Marshals Service is authorized to collect a commission for selling seized property. The section also provides the formula for calculating the commission:

> The United States Marshals Service shall collect a commission of 3% of the first $1,000.00 collected and 1 1/2% on the excess of any sum over $1,000.00 for seizing or levying on property (including seizures in admiralty), disposing of such property by sale, setoff, or otherwise, and receiving and paying over money, except that the amount of commission shall be within the range set by the Attorney General.

28 U.S.C. § 1921(c)(1). In other words, to be entitled to a commission under section 1921, the marshal must (1) effect a seizure or levy on the property, (2) dispose of the property by sale, setoff, or otherwise, and (3) receive and pay over money. *Id. See also Coast Engine and Equip. Corp. v. Sea Harvester, Inc.,* 641 F.2d 723, 727 (9th Cir.1981).

At a USMS sale, the Marshal will accept a cash bid from a third party only if the bid satisfies the lien on the property. *Caterpillar Fin. Servs. Corp. v. Mr. C II,* CIV. A. NO. 03–228, 2003 WL 22038378, *2 (E.D.La. Aug. 19, 2003). Creditors, however, often bid on their debtor's property at USMS sales. If a creditor were to actually place a cash bid on the debtor's property, that money would simply revert back to the creditor in satisfaction of the debt. *The Cesare Augusto,* 39 F.Supp. 751, 752 (N.D.Cal.1941). Therefore, a creditor will submit a bid on credit. When this happens, the creditor simply acquires the debtor's property, and the acquisition extinguishes the debt. This practice is more convenient for creditors because they do not have to produce cash to effect the transaction. *Id.* Accordingly, long-standing judicial precedent recognizes that credit bids qualify as the required receipt and pay over of money under section 1921 and therefore entitle the Marshal to a commission. *See U.S. v. Petty Motor Co.,* 767 F.2d 712, 716 (10th Cir.1985); *Sea Harvester,* 641 F.2d at 728; *The Cesare Augusto,* 39 F.Supp. at 752; *The City of St. Ignace,* 19 F.2d 952, 954 (N.D.Ohio 1927).

*(2) The Attorney General's Regulation*

Section 1921 also provides that the Attorney General has authority to "prescribe... regulations which establish a minimum and maximum amount for the commission collected." 28 U.S.C. § 1921(c)(2). On February 2, 1991, the Attorney General exercised this power and promulgated a regulation to set the minimum commission at $100.00 and the maximum commission at $50,000.00. 28 C.F.R. 0.114(h). The regulation states:

> The United States Marshals Service shall collect a commission of 3 percent of the first $1,000 collected and 1.5 percent

on the excess of any sum over $1,000, for seizing or levying on property (including seizures in admiralty), disposing of such property by sale, setoff, or otherwise, and receiving and paying over money, except that the amount of commission shall not be less than $100.00 and shall not exceed $50,000. The U.S. Marshal's commission shall apply to all judicially ordered sales and/or execution sales, including but not limited to all private mortgage foreclosure sales. if [*sic*] the property is not disposed of by Marshal's sale, the commission shall be set by the court within the range established above.

*Id.* The purpose of the regulation is "to eliminate unduly high and low commissions resulting from a strict application of the statutory formula in section 1921." 56 Fed.Reg. 2436. Specifically, "[t]he minimum guarantees the Government a fixed level of cost coverage, while the maximum protects the private litigant from excessive Marshal's Service commissions." *Id.*

### (3) The USMS Guideline

Credit bidders typically bid the amount of the debt owed. *See Petty Motor,* 767 F.2d at 713 (noting that the creditor bid the full amount of the indebtedness); *Sea Harvester,* 641 F.2d at 728 (same); *The Cesare Augusto,* 39 F.Supp. at 751 (same); *The City of St. Ignace,* 19 F.2d at 952 (same). This makes sense because, as noted *supra,* the USMS will not accept a bid from a third party unless it satisfies the lien on the property. In the 1990's, however, credit bidders in Pennsylvania began to submit credit bids of $1.00. (Duroncelet's Supp. Mem. Opp'n, Ex. A, Decl. of Lazar at ¶ 4.) The bidders would then argue that the amount of the Marshal's commission should be calculated on the $1.00 credit bid. (*Id.*) The USMS, on the other hand, interpreted section 1921 to require that the commission be calculated on the amount actually collected in the transaction. (*Id.* at ¶ 5.) Therefore, according to the USMS, the amount collected was the amount of the debt that the transaction extinguished—not the $1.00 credit bid. (*Id.*) In 1991, the USMS included its interpretation of section 1921 in the USMS Policy and Procedures Manual, Chapter 7.6–4(d)(1994). The guideline states:

> **D. Credit Bid.** A Credit bid submitted by judgment creditor constitutes "receipt and pay over of money" within the meaning of 28 U.S.C. § 1921. Thus, a judgment creditor will generally be liable for paying the U.S. Marshal's statutory commission when a credit bid is submitted at a USMS sale. In some cases (commonly in private mortgage foreclosure actions), a judgment creditor may submit a credit bid of a nominal sum, such as $1.00, in an attempt to avoid payment of the U.S. Marshal's commission. In such a case, the U.S. Marshal's commission should be calculated on the basis of the amount of the judgment lien or, if established, the appraised value of property under levy, whichever is smaller. For example, if a creditor holding a $1 million dollar judgment directs the U.S. Marshal to execute a levy on a parcel of real estate worth $500,000, and the judgment creditor submits a credit bid of "$1.00 plus costs," the U.S. Marshal commission should be based on $500,000.00, which amounts to $7,515.00.

(Def.'s Mem. Opp'n at Ex. 2.) In 2003, the USMS included the guideline in the USMS Directives, Chapter 11.7(D)(1)(c) without any changes.

### B. Analysis

#### (1) What Does the Guideline Interpret?

■ The first issue that the Court must decide is whether the USMS guideline interprets section 1921 or the Attorney General's regulation. This is because an ad-

ministrative interpretation of a regulation calls for a different level of deference from a reviewing court than an administrative interpretation of a statute. Specifically, the Court should defer to an agency's interpretation of its own regulation unless it is plainly erroneous or inconsistent with the regulation. *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). The Court should defer to an agency's interpretation of a statute it only to the extent that it has the power to persuade. *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

■ Here, the USMS guideline essentially provides that the Marshal's commission in a private mortgage foreclosure sale made on the basis of a credit bid is calculated on the basis of the amount of the debt extinguished. Accordingly, the guideline appears to be an interpretation of the base amount upon which the commission is calculated. Section 1921 identifies the amount upon which the commission is calculated. Specifically, the statute provides that "[t]he United States Marshals Service shall collect a commission of 3% of the first $1,000.00 collected and 1 1/2% on the excess of any sum over $1,000.00." 28 U.S.C. § 1921. Therefore, because the guideline specifies the amount collected in a credit bid transaction, the guideline interprets section 1921. Furthermore, Joe Lazar, the Associate General Counsel for the USMS, specifically declares that the USMS guideline is based on the USMS's legal interpretation of the "amount collected" under section 1921(c). (Duroncelet's Supp. Mem. Opp'n, Ex. A, Decl. of Lazar at ¶5.) Accordingly, the Court finds that the guideline interprets section 1921, and that it is entitled to *Skidmore* deference.

*(2) Skidmore Deference*

■ Under *Skidmore,* the Court should accord respect to an informal agency pronouncement, such as the USMS guideline, depending upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore,* 323 U.S. at 140, 65 S.Ct. 161. *See also Christensen v. Harris Co.,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). The Court finds that the guideline is persuasive, and the Court will defer to it.

First, the guideline is consistent with the language of section 1921. As other courts that have applied the guideline have observed, section 1921 provides for a Marshal's commission when the transaction takes place by a setoff. The transaction that SBLS effected by submitting a credit bid to acquire property in satisfaction of a debt "walks and talks like a setoff in satisfaction of a private mortgage as contemplated by 28 U.S.C. § 1921." *Caterpillar,* 2003 WL 22038378 at *2. *See also Small Business Loan Source, Inc. v. F/V MISS KAITLIN,* 2004 WL 2009278 (E.D.La. Sept. 8, 2004) (finding that a credit bid in the amount of $75,000.00 on a vessel that satisfied a $514,941.00 debt effected a setoff, and calculating the marshal's commission on the amount of the debt extinguished); *State Mut. Life Assurance Co. v. North Hotel Assoc.,* 1991 WL 114600 (E.D.Pa. June 20, 1991) (noting that the extent to which the mortgagor's debt becomes extinguished is the proper basis for the calculation of the marshal's commission, not the stated amount of the credit bid). *But see Stone Inv. LLC v. I.S. Indus., Inc.,* 2002 WL 32349887, at *1 (E.D.Pa. July 17, 2002) (declining to interpret the amount collected in section 1921 to mean amount that the debt has been extinguished because the court found that interpretation contrary to the plain language of the statute). Congress clearly intended the USMS to receive a commission on transactions that effect a setoff

because section 1921 explicitly provides for a commission when the transaction takes place by setoff. The guideline ensures that the Marshal will receive a commission when the transaction takes place by setoff. *Compare Moore v. Hannon Food Service, Inc.*, 317 F.3d 489, 497–98 (5th Cir.2003) (declining to defer to an agency pronouncement under *Skidmore* because it was contrary to the plain language of the statute).

■ Second, the guideline is consistent with the purpose of section 1921. The purpose of section 1921 is to ensure uniformity in the calculation of the Marshal's commission. *See Odyssey Stevedoring Corp v. Celtic Venture*, 817 F.2d 709 (11th Cir.1987) (citing H.R.Rep. No. 1724, 87th Cong., 2d Sess., at 5 (1962)) (noting that the purpose of section 1921 was to achieve uniformity in the amount and computation of the Marshal's commission); *Coast Engine*, 641 F.2d at 727 (noting that the purpose of section 1921 was "to institute a uniform method of computing commissions"); *Hill v. Whitlock Oil Services*, 450 F.2d 170, 174 (10th Cir.1971) (explaining that section 1921 seeks uniformity by "the same method of assessment"). The guideline advances the goal of uniformity by providing a consistent and principled method for calculating the Marshal's commission. To decline to follow the guideline would, as this case aptly demonstrates, frustrate uniformity in the calculation of the Marshal's commission by permitting creditors to set the Marshal's commission arbitrarily. *See MISS KAITLIN*, 2004 WL 2009278, at *2 (noting that "the practical purpose of the bid was to set the Marshal's commission").

Finally, the guideline is consistent with longstanding judicial precedent. As noted *supra*, courts have long interpreted section 1921 to permit creditors to submit credit bids in lieu of cash bids in order to acquire their debtors' property in satisfaction of a debt. This custom developed largely for the convenience of the parties. Creditors typically bid the amount of the debt, and courts treated the credit bid as the constructive receipt and pay over of money under section 1921. Therefore, the courts calculated the Marshal's commission on the basis of the amount of the debt that was extinguished. Significantly, as one court cautioned, this custom of convenience "must not be permitted to degenerate into a means of underpaying the fees fixed by Congress for the support of the marshal's and clerk's offices." *The Cesare Augusto*, 39 F.Supp. at 752. The guideline prevents the credit bid practice from doing just that. Furthermore, three other courts have found the guideline reasonable and have approved its application. *See Caterpillar*, 2003 WL 22038378; *MISS KAITLIN*, 2004 WL 2009278; *North Hotel*, 1991 WL 114600. *Compare Malacara v. Garber*, 353 F.3d 393, 401 (5th Cir.2003) (declining to defer to agency opinion letter under *Skidmore* because the agency's position was based on an interpretation of the law that one circuit court had overruled).

Ultimately, the guideline is consistent with the language and purpose of section 1921. Furthermore, the guideline is logically coherent and consistent with longstanding judicial precedent. Accordingly, the Court finds that the guideline is persuasive and the Court will defer to it.

### C. Calculation of the Marshal's Commission

■ Under the guideline, when a creditor submits a nominal bid, the Marshal's commission should be calculated on the basis of the amount of the judgment lien or the appraised value of the vessel, whichever is smaller. Here, the Court finds that SBLS's credit bid of $75,000.00 was nominal as the guideline contemplates the term "nominal." This is because the credit bid of $75,000.00 bears no relation to the value that SBLS received in the transaction—

specifically, a vessel worth $738,000.00. *See MISS KAITLIN*, 2004 WL 2009278 at *3 (finding that a $75,000.00 credit bid was nominal when the creditor acquired a vessel valued at $510,000.00); *Caterpillar*, 2003 WL 22038378 at *2 (finding that a $10,000.00 credit bid was nominal when the transaction extinguished a $1,444,000.00 judgment lien). The vessel is valued at $738,000.00, and the amount of the lien is $763,869.27. Therefore, the value of the vessel is the appropriate amount on which to base the commission under the guideline. This produces a commission of $11,085.00.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES SBLS's motion to set the Marshal's commission at $1,140.00.